## A. KNOLL, ADMR., v. N. Y. ETC. RY. CO.

ERROR TO THE COURT OF COMMON PLEAS OF ERIE COUNTY.

Argued April 25, 1888—Decided October 1, 1888.

1. Subject to the right of a lien creditor to interfere by proper process to prevent waste, the owner of real estate has, by virtue of his owner-ship, the jus disponendi of the property, including everything upon or beneath the surface that is a part of it.
2. And where, in the construction of a railroad, property is injured but not taken, the right of action for such injury is in the owner of the freehold, and a mortgagee out of possession is not in a position to main-tain such action.
3. Especially is this the case, when the owner of the freehold has al-ready in good faith settled in full with the railroad company for the injury occasioned, and the mortgagee has made no attempt to collect his debt, and fails to show that his mortgage interest has been impaired.
4. If the owner should refuse to move, or should act fraudulently, the courts, on proper application by lien creditors, might treat him as a trustee and require him to do, or to permit his creditors to do in his name, what might be necessary to an adjustment of the damages, and impound the money for the benefit of those entitled thereto: Road in Upper Dublin, 94 Pa. 126: per WILLIAMS, J.

Before PAXSON, STERRETT, GREEN, CLARK and WILL-IAMS, JJ.; GORDON, C. J., and TRUNKEY, J., absent.

No. 278 January Term 1888, Sup. Ct.; court below, No. 73 May Term 1887, C. P.

On March 15, 1887, Anthony Knoll, administrator of the estate of Wencelaus Hermle, deceased, brought an action on the case against the New York, Chicago & St. Louis Railway Co., to recover damages for injuries to real estate upon which the plaintiff held a mortgage.

The narr set out the death of Wencelaus Hermle in April, 1872, owning the equitable title to certain lots in Erie, num-bered 39 and 40, in Courtright's plan, and that on July 10, 1873, the plaintiff was appointed his administrator; that in October, 1873, he had sold the lots to Mrs. Maria Hermle for $2,000, for which she had executed a purchase money mort-

gage in that amount, on which mortgage there was a balance
due of nearly $1,600; that there was a balance of purchase
money due from the decedent to one Courtright and payable
before the mortgage debt, of almost $500; and charged that
in 1881, the defendant company had constructed its railroad
on and along Nineteenth street in front of said lots, and had
since run its cars and locomotives thereon night and day; that
by reason of the occupation of said street by the moving trains
of the defendant company, the lots were rendered for many
purposes inaccessible, and, because of the smoke, dust, sparks
and noise from the locomotives and cars, the dwelling-house
thereon was endangered and rendered undesirable as a resi-
dence, and the property so depreciated by said obstructions,
inconveniences and annoyances inflicted by the defendant com-
pany that the plaintiff was unable to collect his mortgage out
of the property, and his · mortgage interest had been impaired
by the defendant company to a large amount, etc.   The plea
was, not guilty.

At the trial on January 18, 1888, the plaintiff put in evi-
dence the mortgage and the balance due thereon; the amount
of purchase money unpaid to Courtright, the vendor of the
decedent.; the Orphans' Court sale by himself to Maria
Hermle, the widow of the decedent, and followed with evi-
dence, admitted pro tempore and under exception, tending to
show that before the construction of the railroad the property
was worth from $1,600 to $2,000 and that, by the construction
and operation of the road, the value of the property had been
depreciated about 40 per cent.   The plaintiff then rested.

In its case in chief, the defendant offered to show that on
November 20, 1884, the company defendant paid to Mrs.
Hermle, as owner of the lots in question, $200, in full settle-
ment of any and all claims for damages or compensation which
had arisen by reason of the construction and operation of the
defendant's road in front of said property, to be followed by
the record of the release executed by Mrs. Hermle; this for
the purpose of showing that the company had paid the dam-
age stated, and also the amount of damage sustained by the
property.   The offer was objected to as irrelevant, and ex-
cluded, under exception to the defendant.   The defendant
then put in evidence the record of the Orphans' Court sale of

the property to Mrs. Hermle, to show that the property was sold to pay the balance of purchase money due from her deceased husband, the amount being stated at $316.89. Next was put in evidence an account of the plaintiff as administrator of Mr. Hermle, settled on April 2, 1877, from which it appeared that $69.80 had been received by Mrs. Hermle under the widow's exemption law, and that she had been credited on the bond and mortgage debt, $1,350. The ordinance of the city of Erie, permitting the occupancy of Nineteenth street by the defendant company, was then put in evidence, followed by the record of plaintiff's mortgage, to show that no proceedings had been commenced upon the mortgage for the collection of it.

The defendant, at this stage of the case, made the following motion :

Now to wit, January 19, 1888, defendant by attorney, moves the court to order a nonsuit to be entered in said case, plaintiff being only a mortgage creditor of Maria Hermle, the owner of the lots described in the mortgage of plaintiff, and it also appearing that he had not proceeded against said lots for the collection of his said mortgage debt.

Mr. Wetmore : I desire it noted here now that it is agreed that the court may deduct from any verdict that the jury may render, $200 and the interest on it from the time it was paid Mrs. Hermle.

Mr. Davenport : The gentleman might agree to that, but I don't desire any agreements made.

By the court : I am clearly of the opinion that the mortgagee is not such an owner of the property that he could recover damages in a proceeding under the act authorizing the appointment of viewers. The act only gives that right to apply for the appointment of viewers to owners of property, and in this state a mortgagee is not an owner of property. He only has a lien upon it. But this is not an action of that kind. It is an action on the case for consequential damages, and I think that in that case the damage to the mortgagee would not be such a direct damage as to give him a right of action, therefore the motion for a nonsuit is allowed.

A rule was granted the same day to show cause why the judgment of nonsuit should not be taken off, and on February

27, 1888, the court, GUNNISON, P. J., in an opinion citing Ives v. Cress, 5 Pa. 118, held that the action could not be maintained and the rule was discharged. Thereupon the plaintiff took this writ assigning the discharge of the said rule as error.

*Mr. J. W. Wetmore*, for the plaintiff in error:

Corporations invested with the privilege of taking private property for public use shall make just compensation for property taken, injured or destroyed by the construction of their works : Art. XVI., § 8, constitution of 1874. A remedial provision in a constitution, in furtherance of natural right and justice, should be liberally construed to effect the beneficial purpose had in view : Cooley, Const. Lim., 60, n. Section 11, act of February 19, 1849, P. L. 83, requires the viewers to report to whom the damages are payable. If the lands were mortgaged to their full value, the court would certainly direct the payment of the award to the mortgagee. A mortgagee of land, though not in possession, may maintain an action of tort, in the nature of trover, against a person who buys of the mortgagor wood or timber wrongfully cut by the latter from the mortgaged premises : Searle v. Sawyer, 127 Mass. 491 ; Jackson v. Turrell, 39 N. J. 329. Upon these principles the present action was maintainable.

*Mr. S. A. Davenport* (with him *Mr. Geo. P. Griffith*), for the defendant in error:

From a careful reading of article XVI. § 8, of the constitution, it would seem that, from the nature and character of an ordinary bond and mortgage, they were not contemplated as the property to be "taken, injured or destroyed," and that only real estate and improvements upon the same were in view. Had the railroad been located upon these lots, then, under the general railroad law of 1849, the viewers assessing damages would also return what mortgages were liens upon the same ; but no such provision can be held to exist in favor of those holding mortgage liens on land not taken by the railroad. Moreover, the plaintiff never even tried to collect his mortgage, and, until he has exhausted the real estate by a judicial sale, he cannot know that his mortgage interest has been impaired.

OPINION, MR. JUSTICE WILLIAMS:

This case is somewhat anomalous. The plaintiff is the holder of a mortgage upon a house and lot in the city of Erie. The defendant company, acting under the authority of the railroad laws of the commonwealth and an ordinance of the city of Erie, has built a single track railroad along the centre of Nineteenth street, on which the mortgaged property fronts. The complaint of the plaintiff is, that the value of the property has been depreciated by the building of the railroad along the street, and that his security as a mortgage creditor has been impaired to the same extent. No effort has been made to collect the debt or to bring the mortgaged premises to sale, so as to determine what amount could be realized out of it, but this suit is brought to recover in damages the amount of the alleged depreciation in the value of the property.

From an examination of the testimony we learn that the plaintiff is the administrator of W. Hermle, deceased, who died in 1872. At the time of his death, Hermle was the owner of the equitable title to the lot in question, and had erected the dwelling-house now standing on it. He left a widow to survive him, but so far as the evidence informs us, no issue. Soon after his appointment as administrator Knoll made his application to the Orphans' Court for leave to sell the house and lot at public sale for the payment of debts. Leave was granted, the sale made and Mrs. Hermle, the widow, became the purchaser at the price of $2,000. She paid no part of the purchase-money, but gave her bond and mortgage for the amount of her bid, and this is the bond and mortgage which Knoll alleges is impaired in value by the act of the defendant in building its road along Nineteenth street. The mortgage was made in 1873, the railroad was located in 1881, and this suit was brought in 1887.

Our first question is, whether the amount due upon the mortgage is greater than the present value of the property bound by it, after providing for a prior incumbrance. If it is not, the plaintiff has nothing of which to complain. The question is, not whether the property is worth less than it was when the mortgage was taken, but whether it is worth less than the plaintiff's debt. It is the injury to him, not that sustained by the lot owner, on which his right to recover must rest.

It must be borne in mind that the plaintiff is a mere trustee. As administrator of W. Hermle he holds this mortgage for those who may be entitled to the fund on final settlement of the estate, and these after the lapse of fifteen years are presumably not creditors but the heirs-at-law of the decedent. In 1877, the plaintiff filed a partial account of his administration of the estate, from which it appears that the personal estate was appraised at $69.80, and was retained by the widow as part of the amount allowed her as exempt from the claims of creditors. The decedent had no real estate except the house and lot now owned by his widow and represented by plaintiff's mortgage. The account also shows that Mrs. Hermle had paid to apply on the mortgage, "in money and debts assigned to her," the sum of $1,350, with which the accountant charged himself. This left $650 of the principal still due, with some interest. Whose was this balance? Out of it Mrs. Hermle was entitled to take the balance of her $300, as of the date of the mortgage. This would take $230 from the $650, leaving only $420 for distribution, and, in the absence of issue, one half of this balance would belong to her under the intestate laws. The amount to which the plaintiff would be entitled as administrator, would be in this manner reduced to about $200, a sum which under the evidence would be abundantly secure upon the property. As to Mrs. Hermle's interest in the mortgage she is very clearly estopped from making any claim against the defendant, because she agreed with the defendant that the damages sustained by the property were $200, and upon the payment of this sum to her she executed and delivered a release of all claims for damage by reason of the location of the railroad on Nineteenth street. As she could not now claim a larger sum than that agreed upon, Knoll cannot claim it for her, but must be regarded as the representative of the other parties entitled to share in the fund. He fails to show, therefore, that his security has been impaired for the sum he is entitled to collect from Mrs. Hermle upon the mortgage, and for this reason alone, the court below was justified in withdrawing the case from the jury.

But, while indicating a sufficient reason for affirming the judgment in this case, we have no inclination to avoid the consideration of the precise point on which the case turned

in the court below, and which has been presented here with so much earnestness and zeal by the learned counsel for the plaintiff in error. Is the plaintiff, on the assumption that his security has been impaired, in a position to maintain this action against the company defendant?

The title to the property injured is in Mrs. Hermle, the owner. The plaintiff is a mortgagee, out of possession; a holder of an incumbrance upon the title merely. As a lien-creditor he has the right to prevent the depreciation of the property, bound by his judgment or mortgage, by the commission of waste thereon. If the owner, or a stranger to the title, attempts the removal or destruction of timber trees, of the minerals, or the buildings, he may interfere by writ of estrepement or injunction to prevent it; but, subject to this right of the lien-creditor to stay waste, the owner has by virtue of his ownership the jus disponendi of the property, including everything upon the surface or underlying it. He may lawfully sell his timber or his buildings, and if the vendee is allowed to remove them a good title will vest in him, provided always that the sale be fairly and honestly made. The creditor has the right to interpose, if he will, but if he does not do so, the severed articles pass out from under his lien when they pass beyond the lines of the property on which his lien rests. While on, or affixed to, the freehold, he may insist that they shall so remain; but if severed and removed, his right to them by virtue of his lien on the freehold is gone. Vigilance is the duty of a creditor: Vigilantibus et non dormientibus jura subveniunt.

But the injury complained of in this case is not waste. The defendant company has not entered upon the lot covered by the mortgage or removed anything from it. It has entered upon a public highway in a lawful manner and in the exercise of the right of eminent domain. Its entry could not have been prevented by the plaintiff, nor its work arrested by a writ of estrepement or injunction. The plaintiff alleges that the value of the property bound by his lien has been diminished by the construction of the railroad. So it might have been by the erection of a factory or a tavern on a neighboring lot, or by a change in the use or occupancy of the buildings near it; but, so long as there is no entry upon the lot bound by the

lien, and no unlawful act done by the defendant, the plaintiff has no ground upon which to stand. The right of action for such consequental injuries is in the owner, and if the party exercising the right of eminent domain desires to make an amicable settlement for any damages done thereby, the owner residing on the land is the proper person to whom to apply. The injury is one done to the freehold, as the result of the lawful act of another done beyond the lines of the injured property, and the owner of the freehold is the only person in whom a right of action for such an injury can reside. If the owner should refuse to move, or should act fraudulently, the courts upon a proper application by lien creditors would no doubt treat him as a trustee and require him to do, or permit his creditors to do in his name, what might be necessary to an adjustment of the damages, and impound the money for those equitably entitled to receive it.

In this case, the owner has settled with the defendant and given a release of damages. There is no allegation that the settlement was secured by fraud on the part of the defendant, or made by the owner with a purpose to defraud the plaintiff. The plaintiff brings his suit upon a right of action which he alleges rests in him as a lien-creditor. Notwithstanding the settlement and release by the owner, he claims to be entitled to recover *his* damages, as distinguished from the damages of the owner. The right of action asserted is not that of the owner of the property, but one independent of, and additional to, that which resides in the owner. If this position is tenable for the plaintiff it would be equally so for any number of lien-creditors of Mrs. Hermle. A settlement with or a recovery by one, would not estop another from taking the chances of a more favorable verdict. To state the position is a sufficient argument against its soundness.

Perhaps the case that comes nearest to our question is In re Road in Upper Dublin and Whitemarsh Township, 94 Pa. 126. A public road had been laid out over a farm in Montgomery county, of which Bissinger was owner but upon which Nash held a purchase-money mortgage for $10,000. Nash claimed to be entitled to the damages sustained by the opening of the road, as the holder of the mortgage. On the other hand, Bissinger, as owner, released them. The Court of Quar-

ter Sessions held the release of the owner effectual as an extinguishment of all claim for damages. The judgment was affirmed by this court with a per curiam opinion in which the following paragraph occurs: "Nash might perhaps have brought his case on the record by a petition with the necessary averments, but as it stands we cannot take cognizance of the question he has attempted to raise." If by "necessary averments" Nash had shown to the court that Bissinger was acting in bad faith towards him, and was releasing the damages, not because the advantages resulting from the opening of the road were, in his opinion, equal to or greater than the disadvantages, but to prevent Nash from securing them to apply upon his mortgage, then it is probable that the Court of Quarter Sessions would have entertained his petition and made such order as to secure a fair ascertainment of the damages and a proper appropriation of them. The claim asserted, however, would have been that of the owner, and the damages when settled would have been paid out under an order of the court. Action analogous to that now suggested has been taken in right of way cases, whenever the courts have obtained control over the damages assessed, and distribution has been made on equitable principles: Powell v. Whitaker, 88 Pa. 445; Workman v. Mifflin, 30 Pa. 362. In these cases, the courts seem to have regarded the owner as a trustee for his lien-creditors, and a recovery in his name as one to be controlled for their benefit.

In the case at bar, if appraisers had been appointed in lieu of the settlement made between the parties, they would have made report, not only fixing the amount of the damages, but stating the fact that the plaintiff was the holder of an unsatisfied mortgage, and recommending the money to be paid into court for the benefit of the parties entitled. If this had been done, the plaintiff might have asked that the money be paid to him upon his mortgage, but if the appraisers had made no mention of the mortgage and their report had been approved and the money paid to Mrs. Hermle without the intervention or objection of the plaintiff, such payment would have been as to the defendant a final disposition of the claim for damages. An agreement upon the amount of damages made with the owner in good faith, followed by payment to, and a release by him, is equally conclusive upon the claim.

There was, it will be remembered, no entry upon the lot in controversy, no appropriation of any part of it or of anything upon or affixed to it; and as a settlement fairly made with the owner was, as we have seen, a final disposition of the claim for damages it follows that the plaintiff has no further remedy. Had the road been located over any portion of this lot, and had the damages been settled by the parties or adjusted without notice to the plaintiff, it is probable that the lien of the mortgage would not be divested, and the mortgagee might in that case proceed upon his mortgage in the same manner as if a sale of part of the mortgaged premises had been made to a private person, selling first that which still belonged to the debtor, and if his money was not made thereby, then selling that which the railroad company had taken. If such had been the situation the plaintiff would have had two remedies at his command; one through the owner as a trustee of the title for his lien-creditors, and one as mortgagee to be made effective by process upon his mortgage. In the case in hand, the plaintiff had the first of these remedies only, and that was extinguished by the settlement with and release by the owner. We conclude that the plaintiff's counsel entertained substantially this view of the case, for upon the trial he offered, and asked that his offer be entered upon the stenographer's notes of the trial, that the $200 paid by the defendant to Mrs. Hermle might be credited upon whatever sum the jury might assess the damages to his client. This was a concession that the payment to the owner was satisfaction pro tanto of the damages sustained by the property. But, if the payment to the owner was a satisfaction to any extent whatever, it was a satisfaction in toto. It was as broad as her right as owner; and as it concluded her it must necessarily conclude all persons claiming through her. The court below was therefore right in the legal rule applied, and upon which the compulsory nonsuit was entered.

Judgment affirmed.

Mr. Justice STERRETT and Mr. Justice CLARK dissented.