## Searle v. Aylesworth et al.

*Waste—Estrepement—Mortgage—Cutting of timber on mortgaged premises—Secret equity—Acts of April 22, 1850, P. L. 549, May 4, 1852, P. L. 584, May 19, 1893, P. L. 108, and May 22, 1895, P. L. 113.*

1. A mortgagee is not affected by a secret equity of which he has no notice. He is not bound to go beyond the record.

2. Where real estate is held by a title which is regular on its face, a *bona fide* mortgagee thereof, or one claiming title under such mortgage, is not liable to be affected by any secret trust or equity.

3. An unrecorded conveyance of timber is void against a mortgagee for a valuable consideration whose mortgage covering the land was executed and recorded later than the date of the agreement.

4. If an immediate severance of timber is not contemplated by a deed, such reservation is an interest in land; if an immediate severance is in view, it is personalty.

5. Waste at common law is spoil or destruction permitted in houses or corporeal hereditaments to the injury of one who has the remainder or reversion in fee. Any act which does permanent injury to the freehold or inheritance is waste. The cutting of timber is waste.

6. A petition for a writ of estrepement to stay waste impliedly admits that the waster is in lawful possession of the property on which he is committing waste.

7. A writ of estrepement is not appropriate to the staying of the acts of a trespasser or to his eviction.

8. Where a person cuts timber on land under an unrecorded agreement with the owner, he cannot be considered as a trespasser by a subsequent mortgagee without notice of the sale of the timber.

9. Where a person cuts timber under an unrecorded agreement with the owner of the land, and, while doing so, has no residence on the land or actual possession thereof, except that incident to the mere cutting of the timber, a mortgagee under a mortgage executed subsequently to the agreement has a right to rely upon the record, and his rights are superior to those of the person cutting the timber.

10. A mortgagee, as a lien creditor, has the right to prevent depreciation of the property bound by his mortgage by the commission of waste thereon; and if the owner or a person claiming under him attempts the removal or destruction of timber, he (the mortgagee) may interfere by writ of estrepement or injunction to prevent it.

11. Under the Acts of April 22, 1850, P. L. 549, and May 4, 1852, P. L. 584, and under its general equitable powers, the court may dissolve a writ of estrepement on conditions.

12. Where a writ of estrepement has been issued against a person to prevent him from cutting timber which he had purchased under an unrecorded agreement from the owner, and the owner has subsequently mortgaged the land, the court, in the exercise of its equitable powers, may dissolve the estrepement on condition that the person cutting the timber files a bond, ample in amount, to protect the mortgagee against any loss that may possibly be occasioned to him by removing the timber from the mortgaged premises.

Searle *v.* Aylesworth et al.

Estrepement.  C. P. Susquehanna Co., Aug. T., 1924, No. 92.

*G. E. Gardner* and *Thomas Doherty*, for plaintiff.

*Van Scotten & Little*, for defendants.

MAXEY, J., 45th judicial district, specially presiding, July 12, 1924.—Plaintiff, by a petition filed, averred that she was the mortgagee in a certain mortgage given by George Ridley, which mortgage was executed Oct. 21, 1918, and duly recorded, and that there is due on this mortgage the sum of $1100, with interest from Aug. 17, 1923, and that this mortgage constitutes a lien on about 171 acres of land in the Township of Forest Lake, Susquehanna County, and that in said mortgage it is stipulated as follows: "No timber to be cut or removed from the above land without the written consent of the mortgagee, except to repair buildings and fences and for household purposes of the mortgagor."

The petition further sets forth that on Oct. 27, 1921, George Ridley and Lillian Ridley, his wife, conveyed the said land to Ida Aylesworth, subject to said mortgage.

The petition further avers that the mortgagor and the defendant, William S. Baldwin, are committing waste to the freehold and real estate above described by cutting and removing merchantable timber and marketing the same and converting the proceeds thereof to her or their own use, to the prejudice of the petitioner.  It is averred that this cutting of timber is liable to reduce the value of said real estate below the amount remaining unpaid upon said mortgage.

The petitioner prays for an order to the prothonotary to issue a writ of estrepement to stay waste, with the same effect to all intents and purposes as if the same had been issued after ejectment brought in case where such action is the proper remedy.

The defendant, William S. Baldwin, answers as follows:

He admits that the plaintiff is the mortgagee in the mortgage described. He also admits the existence of the prohibition in said mortgage against the cutting of timber on the land described.  He admits that the land described was conveyed by George Ridley and wife to Ida Aylesworth on Oct. 27, 1921, subject to said mortgage.

He denies that he is committing waste to the freehold and real estate described in the above-stated mortgage, to the prejudice of the plaintiff.  He denies that the value of said real estate is below the amount remaining unpaid upon said mortgage.

He alleges that he is the owner of all the timber which he has cut or is about to cut upon the premises described in said mortgage, by virtue of a certain contract given by George Ridley, dated April 30, 1918, and duly recorded in the Recorder's Office of Susquehanna County in Deed Book 136, page 710. He alleges that, by virtue of a written and verbal agreement, the time for the removal of the timber so purchased by him from said Ridley was extended by Ida Aylesworth to Aug. 30, 1924.

He alleges that he has faithfully complied with all the terms of the contract so made with Ridley, and the extension for the removal of the timber made by Ida Aylesworth, and that he is the owner and is rightfully in possession of said timber and has the right under said contract to cut and remove the same without liability to the plaintiff or any other person.

### The proceedings.

At a hearing held before the court on June 16, 1924, upon filing a bond, the writ of estrepement issued in this case was dissolved as to the timber already

cut, but as to the timber remaining standing on said land, the restraining effect of the writ of estrepement was continued until final hearing.

A further hearing was had in this case on June 20, 1924. The following facts were established:

## Facts of the case.

1. July 1, 1914, George Ridley, the owner of a farm of 171 acres of land in Forest Lake Township, known as the "Tilden Farm," confessed judgment in the sum of $3000 (being the purchase money of the farm) to A. B. Smith, trustee for Clara M. Searle and Anna C. Searle, or bearer, and agreed in said confession of judgment that "no timber shall be cut or removed therefrom except for buildings, fences and other improvements upon the premises, except the purchase money therefor be paid . . . to A. B. Smith, Trustee, or other holder of this note." Judgment was entered on the same day, to No. 176, August Term, 1914, in the Prothonotary's Office of Susquehanna County.

2. April 30, 1918, George Ridley executed an agreement with William S. Baldwin, the defendant, conveying unto Baldwin all the standing timber on said farm of 171 acres, "with the right to cut and remove the said timber so sold from said premises at any time within a period of five years from this date" (that is, within the period ending April 30, 1923), "and if any shall remain uncut at the expiration of said period, the same shall revert to the said vendor." This agreement mentions the judgment above referred to and recites the prohibition against the cutting of timber. This agreement contains a phrase to the effect that Anna C. Searle "hereby joins in this agreement and gives consent to the sale of said standing timber as herein specified." However, the said Anna C. Searle did not sign said agreement.

3. In May, 1918, Baldwin began cutting and removing timber from the tract in question, and continued this work until November, 1918.

4. October 22, 1918, the aforesaid judgment (which had been assigned by A. B. Smith, trustee, to Anna C. Searle) was satisfied of record and was superseded by a mortgage for $2721.58 on the Tilden Farm of 171 acres and on two other lots of land in Dimock Township, containing a total of 10¼ acres. This mortgage superseding the judgment was dated Oct. 21, 1918, was recorded Oct. 22, 1918, and was drawn in favor of Anna C. Searle. The mortgage contained the following provision: "No timber to be cut or removed from the above described land without the written consent of the mortgagee, except to repair buildings and fences and for household purposes of the mortgagor."

5. It appears that Baldwin paid for the timber in controversy by conveying to Ridley the "P. S. Kane Farm" of 193 acres in Forest Lake Township, and that Ridley conveyed this farm to Nelson A. Enslin, who gave a mortgage to Ridley for $1400, which mortgage was assigned to Anna C. Searle on April 11, 1919, and which was paid and satisfied Jan. 31, 1923. This mortgage and the mortgage given Anna C. Searle by George Ridley on the Tilden Farm were substituted for the judgment indexed to No. 176, August Term, 1914, above mentioned. The explanation offered of this transaction was that Ridley came to the attorney for Anna C. Searle and said he could sell the Tilden Farm if the mortgage against it was reduced, and asked if Miss Searle would be willing to take the Enslin mortgage for $1400 and reduce the amount of the original mortgage which she had against Ridley. This was done, and Miss Searle credited the amount on the bond and warrant for $2721.58 which said mortgage accompanied. This bond contained the following notation, under date of April 30, 1919: "Received of George Ridley

mortgage of $1400 against Nelson A. Enslin of Forest Lake to apply on the payment of this bond and warrant. (Signed) ANNA C. SEARLE."

6. Aug. 16, 1919, the Ridley agreement with Baldwin for the sale of the timber on the Tilden Farm was recorded.

7. Oct. 27, 1921, George Ridley and wife conveyed the Tilden Farm to Ida Aylesworth, subject to the mortgage to Anna C. Searle.

8. March 10, 1923, Baldwin was given by written contract an extension of time to April 30, 1924, for the cutting and removing of the timber on the tract in question. In this contract it was stipulated that Baldwin would not "cut or remove any timber from said land which is less than eight inches in diameter, two feet above the ground, except hemlock timber." In said contract Baldwin agreed that he would vacate and "surrender up possession of all the land described in said contract and all timber, whether cut or standing, which may be upon said land on April 30, 1924," and, further, "that all timber standing or cut remaining upon said land shall revert to and become the property of said parties of the first part (Ida Aylesworth and Jay Aylesworth, her husband) on April 30, 1924."

9. October, 1923, Baldwin resumed the cutting of timber on the property and continued these operations until about June 1, 1924.

10. April 8, 1924, Baldwin secured from Ida Aylesworth an extension of time to Aug. 30, 1924, in which to make and remove timber from the Forest Lake farm. This agreement was oral, except for the fact that Mrs. Aylesworth gave Baldwin the following receipt: "Montrose, Pa., April 8, 1924, received of William S. Baldwin $25 for the extension of time to August 30th in which to make and remove timber from farm in Forest Lake."

11. There is due to the plaintiff on the mortgage the sum of $1100, with interest from Aug. 17, 1923.

12. The value of the mortgaged premises, if Baldwin cuts and removes all the timber he asserts the right to cut and remove, will be $2000.

13. The uncut timber on the Tilden Farm is now worth as "stumpage" approximately $750.

## The defence.

1. Baldwin claims that, by virtue of the contract of April 30, 1918 (Fact 2, above), he is the owner of all the timber he is cutting on the mortgaged premises, and that he can remove the same without liability to any person.

2. He denies he is committing waste on the mortgaged premises.

3. He denies that the value of the premises is below the amount remaining unpaid upon said mortgage.

## Discussion.

The fundamental question is raised by paragraph 1 above. On this question we find against the defendant. When Baldwin purchased the standing timber on the Tilden Farm from Ridley, there was a judgment on record which expressly restricted the cutting and removing of timber from said farm, "except the purchase money therefor be paid . . . to . . . the holder of this note," on which judgment was entered. Baldwin expressly recognized the existence of this restriction in the contract that he signed with Ridley on April 30, 1918 (Fact 2). He apparently well knew that he could not remove the timber sold unless Anna C. Searle "joins in this agreement and gives consent to the sale of said standing timber." Miss Searle did not join in the agreement and did not give consent to said sale. Baldwin bought only what

Ridley had the right to sell on April 30, 1918, and Ridley had no right at that time to sell the standing timber now in controversy.

It is true that the aforesaid judgment was satisfied of record Oct. 22, 1918, but it was immediately superseded by a mortgage for $2721.58 on the Tilden Farm, and this mortgage contained the restriction on the cutting and removing of the timber in question. At the time that this mortgage was executed and recorded, the agreement of Ridley with Baldwin for the sale of the standing timber was not recorded. In fact, it was not recorded until Aug. 16, 1919. This was about fifteen and one-half months after said agreement was executed. Regardless of Ridley's being restricted in his right to sell the standing timber by the judgment indexed in No. 176, August Term, 1914, and even if we assume that Miss Searle's rights in the present proceeding had their origin at the date of the mortgage, Oct. 22, 1918, we think the mortgage would not be affected by the agreement of Ridley with Baldwin, dated April 30, 1918, which was not, however, placed on record until Aug. 16, 1919. A mortgagee is not affected by a secret equity of which he has no notice. He is not bound to go beyond the record: Zeidler v. Philadelphia Trust Co., 1 Law Times (N. S.) 107. Where real estate is held by a title, which is regular on its face, a bona fide mortgagee thereof, or one claiming title under such mortgagee, is not liable to be affected by any secret trust or equity: Sweetzer v. Atterbury, 100 Pa. 18.

Act of May 19, 1893, P. L. 108:

"Section 1. All deeds and conveyances . . . shall be acknowledged by the grantor, . . . and shall be recorded in the office for the recording of deeds where such lands . . . are lying, . . . within ninety days after the execution of such deeds or conveyance, and every such deed and conveyance . . . which shall not be proved and recorded as aforesaid shall be adjudged fraudulent and void against any subsequent purchaser or *mortgagee* for a valid consideration, or any creditor of the grantor or bargainor in said deed of conveyance."

Act of May 22, 1895, P. L. 113:

"Section 1. It shall be lawful for the owner or owners of land, timber or bark, or for any person or persons having an interest therein, to grant, bargain and sell, . . . by deed, conveyance or contract in writing, signed by the grantor or grantors therein, and proved or acknowledged by them, as now required by law of this Commonwealth for the signing and acknowledging of deeds, all or any right, title, claim or interest such grantor or grantors may have in or to any standing or growing timber, or the bark thereon, upon any lands in this Commonwealth; and any such deed, conveyance or contract shall be taken and deemed as a deed, conveyance or contract conveying and vesting an interest in land.

"Section 2. All such deeds, conveyances or contracts . . . may be recorded in the office for recording of deeds in the county where such land is located, . . . and when so recorded, shall be notice to subsequent purchasers, mortgagees or other lien creditors, notwithstanding the time for the cutting and removal of said timber or bark may be limited by the terms of said deeds, conveyances or contracts."

### First ground of finding.

We must, therefore, adjudge that the conveyance to Baldwin of April 30, 1918 (Fact 2), not having been recorded until Aug. 16, 1919 (Fact 6), is "fraudulent and void" against Anna C. Searle, the mortgagee for a valuable consideration, whose mortgage was executed Oct. 21, 1918, and recorded Oct. 22, 1918 (Fact 4).

Searle v. Aylesworth et al.

It follows, therefore, that the rights of Anna C. Searle in the timber on the Tilden Farm are superior to the rights of Baldwin, and we must negative his averment that he "is the owner of all the timber he is cutting on the mortgaged premises and that he can remove the same without liability to any person."

### Second ground of finding.

It is unnecessary for us to consider the question, raised only in plaintiff's brief, whether or not the extension of time that Baldwin secured from Ida Aylesworth on April 8, 1924, in which to make and remove timber from the Tilden Farm (Fact 10) was invalid as not being in writing, and, therefore, contrary to the statute of frauds. The rule is that if an immediate severance is not contemplated, such reservation (of standing timber) is an interest in land; if an immediate severance is in view, it is personalty: McClintock's Appeal, 71 Pa. 365; Pattison's Appeal, 61 Pa. 294; Mahan v. Clark, 219 Pa. 229.

But the above question cannot be raised in the present proceeding. The petition for a writ of estrepement to stay waste impliedly admits that the "waster" is in lawful possession of the property on which he is committing waste. A man "wastes" only things he possesses, such as his time, his talents or his inheritance. When he does injury to another's property, he commits an act of spoliation or trespass. A writ of estrepement is not appropriate to the staying of the acts of a trespasser or to his eviction. Its purpose is to restrain the wasteful acts of a party lawfully in possession. If Baldwin was a mere trespasser, the mortgagee should have proceeded against him by an action of trespass (formerly trespass on the case) in the nature of waste: Patterson v. Cunliffe, 11 Phila. 564; s. c., 32 Legal Intell. 398; 10 Bac. Abr., 446.

Baldwin, under any view of the law and facts, cannot be considered a trespasser on the Tilden Farm. He is there by the express consent of the owner. However that consent may have been given, after Baldwin's original agreement had expired, as it did expire on April 30, 1923, that consent could not avail against the rights of the mortgagee, who secured a mortgage on the premises prior to April 30, 1923. Whatever rights in the Tilden Tract Baldwin acquired from Ida Aylesworth on March 10, 1923 (Fact 8), or on April 8, 1924 (Fact 10), were subsequent, and, therefore, subordinate to the plaintiff's rights as mortgagee. Baldwin is in much the same position in relation to said mortgagee's rights as he would have been if he had leased the Tilden Farm for five years from April 30, 1918, and had on March 10, 1923, and on April 8, 1924, secured extensions of his lease. He would in that event exercise any rights he had in the new lease in strict subordination to the rights vested in the mortgagee by the then existing mortgage against said property.

Therefore, on this second ground also, we must negative Baldwin's contention that he "is the owner of the timber he is now cutting on the Tilden Farm and can remove the same without liability to any person."

Nor do we believe that Baldwin acquired any rights superior to those of Anna C. Searle by reason of the fact that in May, 1918, which was five months before the execution of the mortgage from Ridley to Anna C. Searle (Fact 4), he began cutting and removing timber from the tract in question and continued this work until November, 1918. We cite here as pertinent the words quoted with approval by Chief Justice Mercur in Miller v. Zufall, 113 Pa. 317, 324: "The defendant had no actual possession by residence, enclosure, cultivation or improvements, but he had gone on it (the land) from time to time, with employees, laborers and teams, cut timber and peeled bark, which he

Searle v. Aylesworth et al.

hauled away and sold. His possession was such, and no other, as a mere intruder might have had; the log-ways were merely such as sufficed for removing the timber and bark that were taken." We hold that the possession that Baldwin had of the timber tract was not such as made the rights of Anna C. Searle under the mortgage subject to the rights of Baldwin to cut and remove the timber in question. Anna C. Searle, in accepting the mortgage from Ridley, had a right to rely upon the record, which did not disclose that Baldwin had any rights in the mortgaged premises. Furthermore, as stated above, when Baldwin acquired certain rights in the timber tract from Ridley, he well knew that Ridley had no right to sell him the standing timber on said tract, "except the purchase money therefor be paid . . . to A. B. Smith, trustee, or other holder of this note."

We cannot subscribe to the argument of defendant's counsel that the plaintiff is equitably estopped from asserting her claim against Baldwin by reason of the fact that she accepted the additional security on the P. S. Kane Farm, set forth in Fact 5 above. The plaintiff, in accepting this security, did not reduce in the slightest degree her legal rights under the mortgage which she held against the Tilden Farm. The consideration for the Enslin mortgage on the Kane Farm for $1400 was Miss Searle's crediting the amount of said mortgage, to wit, $1400, on a bond and warrant for $2721.58 which the mortgage on the Tilden Farm accompanied.

Defendant's denial of the commission of waste on the Tilden Farm is contrary to the facts. Waste, as defined at common law, is spoil or destruction permitted in houses or corporeal hereditaments to the injury of one who has the remainder or reversion in fee. Therefore, any act which does permanent injury to the freehold or inheritance is waste: McCullough v. Irvine's Executors, 13 Pa. 438. The cutting of timber is waste: Givens v. McCalmont, 4 W. 460; Smith v. Chappell, 25 Pa. Superior Ct. 81, 87. "Blackstone says: 'Whatever does a lasting damage to the freehold or inheritance is waste.'" Under these authorities, it follows that the act of Baldwin in cutting timber on the Tilden Farm constitutes waste.

The defendant's denial that the value of the real estate is below the amount remaining unpaid on the mortgage is true in fact, but it is immaterial and irrelevant. Duff's Appeal, 21 W. N. C. 491, 493: The owner of a tract of land has the right to remove and convert into money for his own use the timber growing upon the surface and the minerals underlying it, but if he has lien creditors, they have the right to object to the commission of waste to the prejudice of their liens, and at their instance the owner will be restrained in the exercise of the rights and powers of an owner: Knoll v. Railway Co., 121 Pa. 467, 473, Williams, J.: "The plaintiff is a mortgagee, out of possession, a holder of an encumbrance upon the title merely. As a lien creditor, he has the right to prevent the depreciation of the property bound by his judgment or mortgage by the commission of waste thereon. If the owner or a stranger to the title attempts the removal or destruction of timber trees, of the minerals or the buildings, he may interfere by writ of estrepement or injunction to prevent it; but, subject to this right of the lien creditor to stay waste, the owner has, by virtue of his ownership, the *jus disponendi* of the property, including everything upon the surface or underlying it. He may lawfully sell his timber or his buildings, and if the vendee is allowed to remove them, a good title will vest in him, provided always that the sale be fairly and honestly made." Real Estate Co. v. Hatton, 194 Pa. 449, McCollum, J.: "In Righter v. Hamilton, 10 Pa. C. C. Reps. 260, the court . . . said: . . . 'Equity will, by injunction, restrain a mortgagor from committing waste on the mort-

Searle *v.* Aylesworth et al.

gaged premises at the suit of the mortgagee. The mortgagee is entitled to all the protection his pledge, unimpaired, gives him.' "

## *The remedy.*

Having found that the defendant by his acts is invading the rights of the plaintiff, the only question remaining is the nature of the remedy to be applied. The Act of April 22, 1850, § 1, P. L. 549, provides: "The court out of which said writs (of estrepement to stay waste) shall issue shall have power and authority to dissolve, modify or restrict said writs, and to make such order in the premises as to them (shall) seem equitable, and to enforce such orders by attachment, if necessary." The Act of May 4, 1852, § 2, P. L. 584, provides: "The 2nd section of the act entitled 'An act to prevent waste in certain cases within this Commonwealth,' passed March 29, 1822, 7 Sm. Laws, 520, is hereby extended so as to apply to all cases where the writ of estrepement has issued or may hereafter issue; and the several Courts of Common Pleas in this Commonwealth shall, in all cases of estrepement, have power to hear the parties in a summary manner and dissolve said writ, or make such further order therein as may seem just and right." Byrne *v.* Boyle, 37 Pa. 260; Prescott *v.* Adams, 89 Fed. Repr. 474: Under its general equitable powers the court may dissolve a writ of estrepement on conditions.

In the case at bar the rights of the plaintiff, Anna C. Searle, can be affected adversely only in the event that the balance due her, with interest thereon, should be unpaid, and that upon execution issuing to collect said debt, the value of the premises, after the removal of the timber thereon, would be insufficient to satisfy her claim. If payments on the indebtedness are made promptly hereafter (as they have been heretofore) and the debt is fully paid, it will then be a matter of no concern to the plaintiff whether all the timber in said tract still stands or not. Therefore, the equitable thing to do is to permit the defendant Baldwin to proceed with the cutting and removal of said timber as the owner of the land has authorized him to do, on condition that he file a bond ample to protect the mortgagee against any loss that may possibly be occasioned her by the removing of the timber from the premises against which she now has a first lien. As the value of the mortgaged premises, even without the timber Baldwin wishes to cut, is worth a substantial sum, as testified (Fact 12), and even if we assume that it is worth only half of the sum testified, a bond in the sum of $600 would meet the above requirements. This conclusion is not inconsistent with the law as stated in Knoll *v.* Railway Co., 121 Pa. 467. It is simply the substitution of one form of security for another in the exercise of the court's equitable powers, and also in the exercise of the authority conferred on the court by statute in estrepement cases.

## *Order.*

Now, to wit, July 12, 1924, it is, therefore, ordered that the writ of estrepement issued in this case on June 2, 1924, against the defendants, Ida Aylesworth and William S. Baldwin, and in favor of the plaintiff, Anna C. Searle, be dissolved, on condition that on or before July 21, 1924, a bond in the sum of $600 be executed by the defendant, William S. Baldwin, in favor of the plaintiff, with surety or sureties to be approved by the court after due notice to the plaintiff, conditioned that the said William S. Baldwin will pay to the plaintiff such damages as may be sustained by her by reason of the said William S. Baldwin's cutting and removing timber on the mortgaged premises described in plaintiff's petition, and thereby reducing the value of the mortgaged premises to such an extent that, upon the sale of the said premises

Searle v. Aylesworth et al.

by reason of execution being issued upon the mortgage described above, or upon a judgment entered upon the bond said mortgage accompanies, a sufficient sum should not be realized from the sale of the said premises under execution to satisfy the debt due said plaintiff as evidenced by said bond and mortgage, together with costs. Until said bond is duly executed, approved and filed, the writ of estrepement shall remain in full force and effect.