Rhode Island Hospital Trust Company
vs.
S. H. Greene & Sons Corporation

Eq. No. 330

September 5, 1928.

BAKER, J. This is a foreclosure proceeding brought in equity by the complainant as trustee under a certain trust mortgage executed by said respondent, securing its bonds to the number of 350. Another phase of this case has already been considered by the Supreme Court, 131 Atl. Rep. 547.

Following the entry of a decree, an auction foreclosure sale was held and the balance remaining in the hands of the complainant for distribution amounts to upwards of $110,000, this figure being approximate. The complainant as trustee may also have in addition another small fund which can be added to the above sum.

Prior to the beginning of this case, the property and business of the respondent corporation, which operated a printing, dyeing and bleaching plant in the Town of West Warwick, had been placed by the Court in the hands of receivers in a proper proceeding brought by stockholders, in which neither the complainant as trustee under the mortgage nor any individual bondholders or creditors were made parties. One creditor, the Chase National Bank, intervened on its own motion and became a party.

The case leading to the appointment of the receivers was brought early in the year 1924, decrees being entered on February 21, March 4 and March 25 of that year. The receivers, by virtue of said decrees, were authorized to conduct the business and to borrow on receivers' certificates up to $20,000, which sum was to be a lien on the property ahead of the bonds.

In pursuance of this authority, the receivers did borrow money on certificates from the National Exchange Bank and from D. Bernstein & Sons, the amount now outstanding totaling something over $17,000.

In the year 1923 the respondent corporation had borrowed $40,000 from the Chase National Bank in New York, with which was placed as collateral security 95 bonds of said corporation held by Francis W. Greene, active manager of the respondent corporation, and his sisters.

The receivers, who were the said Francis W. Greene and Mr. Murdock, continued to operate the plant until May, 1925, when it was completely shut down. The complainant began its foreclosure proceedings in July or August of the same year. The operation of the plant was at a loss and during the period it was run by the receivers, they contracted for services, merchandise, supplies, and the like, an indebtedness of nearly $80,000.

These creditors, together with the Chase National Bank, the National Exchange Bank, and D. Bernstein & Sons, have intervened in the case now before the Court, all of them seeking to have their claims declared prior to that of the bondholders.

It appears that the total bond indebtedness is now $245,000, each bond having been reduced some time ago to $700. Of the 350 bonds, 125 are under the control of the said Francis W. Greene, 202 under the control of his cousin, E. A. Greene, the remaining 23 being in small lots and much scattered.

At the present time, the receivers have in their hands upwards of $20,-000 in round figures, derived from the sale of certain property in their possession not covered by the mortgage, and also have available other sums amounting to several thousand dollars.

The question before the Court relates to the proper distribution of these moneys in the hands of the receivers and in the hands of the complainant

as trustee under the mortgage, among the claimants thereto.

It seems clear to the Court that all receivers' costs, expenses, fees, taxes and claims of a like nature should first be paid out from the funds now held by them. After these payments the Court is of the opinion that they should next pay off the indebtedness incurred by them on their certificates to the National Exchange Bank and D. Bernstein & Sons, in so far as the moneys in their hands will permit. This would seem proper because the decree entered in the Superior Court on March 25, 1924, provided in substance that these notes should be paid out of any other assets which the receivers might have in their hands before they should become a lien on the property of the corporation prior to that of the bondholders. If, after these payments, any balance remains in the receivers' possession, in the judgment of the Court it should be applied pro rata to the claims of their creditors, the amount of which, apparently, is not disputed in this proceeding.

As there may be a question, however, as to whether the funds in the hands of the receivers will be sufficient to pay in full the claims of the intervening petitioners National Exchange Bank and D. Bernstein & Sons on their receivers' certificate, it now becomes necessary to determine whether these said certificates should be considered a lien on the funds derived from the foreclosure sale and now in the hands of the trustee ahead of the lien of the bondholders and ahead of the claims of the other intervening petitioners, namely, general creditors of the receivers.

The lien of a first mortgage bondholder is, of course, of great value and importance and obviously, unless through his own actions, should be superseded only in rare instances and in cases of great necessity.

The holders of the receivers' certifi-cates urge that for several reasons they are entitled to priority. It should be remembered that these certificates were made a first lien on the property of the corporation by decrees of this court. It seems very well settled, and in fact not seriously disputed by the parties to this litigation, that in the case of a private corporation, such as we have here, the rule being somewhat different in the case of public service corporations by reason of questions of public policy, a court has no power in itself and apart from the consent of those interested to create an indebtedness by the issuance of receivers' notes or certificates which will supersede the lien of a mortgage unless it becomes absolutely necessary for the care and preservation of the property itself.

> *High on Receivers,* 4th ed. p. 378;
> *Lockport Felt Co.* vs. *United Box, Board & Paper Co.,* 70 Atl. 980;
> *Farmers' Loan & Trust Co.* vs. *Grape Creek Coal Co.,* 50 Fed. 481;
> *International Trust Co.* vs. *Decker Bros.,* 152 Fed. 78;
> *In re J. B. & J. M. Cornell Co.,* 201 Fed. 381.

The evidence discloses that at least a portion of the money secured by the issuing of the receivers' certificates in this case was used to take care of payrolls, and undoubtedly the remainder was expended in operating the plant, because at the time of the receivership the corporation had practically no cash on hand. Using the terms in their narrowest sense, it can, of course, be argued that such expenditures were not for the preservation of the property of the corporation. It becomes necessary, however, to consider the matter as it was presented to the Court at the time the decrees were entered. The evidence shows that there were then a considerable number of unfilled orders; that the corporation had a goodwill of some value; that it had available a complement of skilled help ready to

operate the plant; that if the plant was shut down and closed immediately a rapid depreciation would follow and the help would scatter, and, finally, that at that time textile business was at a low ebb and textile plants brought little if sold at forced sale. With this situation confronting it, it would seem that the Court was entirely justified in authorizing the receivers to borrow money up to a reasonable amount and make such borrowing a first lien, and to at least operate the plant for a short time until the situation could be weighed and considered. As a matter of fact, it appears that under a broad interpretation such a borrowing was really for the preservation of the property. In such a matter as this the discretion of the Court is entitled to great weight and unless there has been a gross abuse its action will not be reviewed.

Clarke, The Law of Receivers, Vol. 1, Ss. 52 & 56.

Tardy's Smith on Receivers, Ss. 556 & 561.

Further, this Court believes that unless clearly wrong it should not repudiate its own obligations and that it has a duty to protect as far as possible those who have extended credit on the strength of its orders and decrees.

*Bank of Commerce* vs. *Central Coal & Coke Co.*, 115 Fed. 878;

*Kneeland* vs. *Luce*, 141 U. S. 491.

After careful consideration, therefore, the Court has come to the conclusion that, under all the circumstances existing in this matter, it had a right to enter the decrees making the receivers' certificates a first lien on the property of the corporation, and, that being so, said certificates should be paid in so far as may be necessary from funds in the hands of the trustee.

The National Exchange Bank and D. Bernstein & Sons also urge as a further reason for giving them a preference that the trustee assented to the entry of the decrees in question and to the issuing of the certificates, and that by its act it bound all the bondholders. The Court does not find this to be the fact. It is obvious that the Chase National Bank was in no way bound by any acts of the trustee because it had itself become a party to the receivership proceedings and was represented therein, and was itself strongly objecting to the conduct of the case.

There is some question as to how far the acts of a trustee under a mortgage securing the bonds in the case of a purely private corporation can bind the individual bondholders. This matter will be discussed more fully hereinafter. But granting that, in certain instances, a trustee may so conduct itself as to affect the rights of bondholders, the Court in this case, on the evidence, cannot find that to be the situation here. It should be remembered that at the time the decrees in question were entered neither the trustee nor the individual bondholders were parties—excepting the Chase National Bank, which later became a party on its own motion. Further, it should be noted that at this time there was no default in the terms of the mortgage as far as any payments of money on the bonds were concerned, and it is very doubtful if there was any real or proper default of any of the other provisions of the mortgage. It is true that the attorney for the trustee was present at the entry of the decrees. An examination of the testimony relating to this, in the judgment of the Court, makes it plain that he was there more in the nature of an observer. It seems to the Court that he made it clear that under no consideration could he be considered as binding the bondholders at that time by his acts. The trustee was not a party to the proceeding, so no strenuous objection was made by it, and apparently the position taken was that the situation would be left to the

sound discretion of the Court. Neither can it be said that the participation in a conference between the entries of the various decrees constituted such an action on the part of the trustee or its attorneys or officers as would bind the individual bondholders. The Court is clearly of the opinion in this matter that the trustee did not act in such a manner as to affect the rights of the individual bondholders, and, for that reason, the intervening petitioners claiming under the receivers' certificates take nothing on this point of their argument.

They contend further, however, that certain of the individual bondholders consented to the entry of the decrees in question and therefore are bound. The Court is inclined to think that this is correct and is a further reason why the receivers' certificates should in any event be placed ahead of certain of the bonds. In the first place, it is admitted that the receivers' certificates should have priority over the bonds controlled by Francis W. Greene apart from those pledged to the Chase National Bank, which will be treated later. The Court is also of the opinion that Mr. Edward Aborn Greene by his conduct substantially gave his consent to the entry of the decrees in question and the making of the receivers' certificates a first lien, and that, therefore, bonds at that time controlled by him are subject to such a lien. It appears in evidence that he was present in person at certain hearings, although of course he was not a party: that he made no objection when it was stated that he was willing that the receivers be given authority to borrow some amount. He himself states that he was willing that they should have a reasonable amount and he apparently does not question the fact that $20,000 was reasonable. He also practically admits that he gave his qualified assent to the entry of the decrees. It appears to the Court, therefore, that

on this testimony these individual bondholders, as above indicated, are not in a position to contest the first lien of the holders of the receivers' certificates.

The general creditors of the receivers claim that no priority should be allowed the National Exchange Bank and D. Bernstein & Sons, and that the claim of all should be on a parity. The Court is unable to adopt this contention. The general creditors when they extended credit to the receivers were in a position, if they had seen fit, to ascertain the authority of the receivers and to find out, by reason of the entry of the decrees, full information regarding the orders of the Court giving the holders of receivers' certificates a first lien. The Court is unable to understand, therefore, why general creditors should be considered on the same footing with the holders of the receivers' certificates, and it finds that they are not so entitled and that the receivers' certificates should be paid in full before the claims of the general creditors of the receivers are considered.

There remains to be determined the position of the Chase National Bank as regards its claim and that of the holders of the receivers' certificates. This bank is a general creditor of the respondent corporation to the extent of $40,000. Its indebtedness is secured by the deposit with it of 95 bonds, being part of the holdings of Francis W. Greene and his family. The testimony shows that the Chase National Bank from the beginning has vigorously and earnestly contested any action which would impair the lien of the bonds it holds. It had no notice and was not present when the receivers were appointed and the first decree entered. Immediately thereafter, on motion, it had itself made a party to the receivership proceedings and attempted to have the previous decree, in which the receivers were au-

thorized to borrow money up to $20,-000 and to issue therefor receivers' certificates which should be a first lien on the property, vacated and annulled. After a hearing, the Court refused to do this. From its decision and decree entered thereon on March 25, 1924, the Chase National Bank took no appeal. It would appear to the Court, therefore, that this matter is res adjudicata and for that reason, among others, it would seem that the claims of the National Exchange Bank and D. Bernstein & Sons as holders of receivers' certificates should be given priority over the lien of the bonds held by the Chase National Bank.

Having determined, therefore, as above indicated, that the holders of the receivers' certificates issued under decrees of this Court should be paid insofar as may be necessary from moneys in the hands of the trustee, the next question would appear to relate to the holders of 23 bonds of the respondent company. Of these six have never taken any part whatsoever in the proceedings. The other seventeen have taken only a slight interest in the matter. If the claims of the general merchandise creditors of the receivers are to be placed ahead of the lien of the holders of these 23 bonds, as said creditors claim should be the case, then it must be by reason of some action on their own part or by reason of some action on the part of the trustee of the mortgage by which they are bound. A careful consideration of the testimony in the case does not, in the judgment of the Court, reveal such clear and convincing conduct on the part of the trustee, its officers or attorneys, as would warrant the Court in saying that their actions in the matter have deprived these bondholders of the lien of their bonds and made it subject to the claims of the general merchandise creditors of the receivers.

Further, as to the action of the bondholders themselves, it is clear that six of them have taken no part whatsoever in these proceedings. Apparently the other 17 did consent to the use of certain moneys held by the trustee and known as the machinery fund for the purpose of assisting in setting up in the respondent's plant what is known as a hand printing establishment. This was done late in the year, 1924, and early in 1925. This phase of the business was small and, as a matter of fact, apparently paid for itself. It was hoped at the time that it might materially assist the receivers financially.

The Court cannot say that the mere consent of these 17 bondholders to the use of this fund in the way indicated was such conduct as to bring about a subordination of their mortgage lien to the claims of the general creditors of the receivers, many of which claims had been incurred prior to the setting up of the hand printing plant. In the judgment of the Court, therefore, the lien of the holders of the 23 bonds in question should not be affected by the claims of the general merchandise creditors of the receivers, and they should receive from the trustee under the mortgage their proper share or proportion of the funds held by it according to their holdings.

The next question relates to the position of the Chase National Bank. The evidence shows clearly that from the very beginning this creditor has contested any attempt to place any claim ahead of the lien of the bonds. (See testimony of Mr. Moss.)

The general creditors of the receivers urge that by reason of acquiescence and consent their claims should be given priority over the claims of this bank. As the Court understands it, they do not claim any direct estoppel or any estoppel in pais. Certainly this cannot be shown. But the creditors do claim such an acquiescence and consent on the part of the Chase National Bank as to amount to what might be termed a quasi estoppel.

After an examination of the testimony, the Court is satisfied that it does not reveal any such situation as the creditors of the receivers claim. There certainly was no express consent on the part of the Chase National Bank to the actions of the receivers in operating the plant and incurring indebtedness. The only direct consent was in relation to the setting up of the hand printing plant, and in this matter practically all parties in interest joined in the hope that the receivers might be benefited. Further, the Chase National Bank put its consent into writing so that there might be no mistake concerning it.

The Court does not feel that by permitting the use of certain moneys in the possession of the trustee for the purpose of equipping this plant the Chase National Bank should be considered to have approved of or consented to the general operation of the plant by the receivers or the incurring of indebtedness by them in such a way as to impair the validity of the lien of the bonds held by it. Also, the matter of the hand printing establishment was an exceedingly small portion of the business as conducted by the receivers.

Apparently, from the testimony, the Chase National Bank or its attorneys were not consulted in connection with the receivership proceedings or the conduct of the business of the respondent corporation by the receivers; nor was said bank or its attorneys furnished with statements or information relating to the finances of the receivership. This bank very early in the case became a party, had its own counsel and safeguarded its own rights. It clearly was an objecting bondholder and, in the opinion of the Court, none of the acts of the trustee, its officers or attorneys, in any way bound it or affected its rights in relation to its claim under the bonds it was holding. It would seem, therefore, that in this matter there is nothing in the evidence which would justify the Court in placing the claims of the general creditors of the receivers ahead of or on a parity with the claim of the Chase National Bank as the holder of 95 bonds, and the Court finds that these bonds held by the Chase National Bank should be paid out of the funds in the hands of the trustee in such proper amount per bond as a calculation may reveal, in satisfaction in part or in whole of its said debt.

Finally, there remains for consideration the issue as raised by the claims of the general creditors of the receivers growing out of the conduct of the business, and the claims of E. A. Greene on behalf of the bonds owned and represented by him, and the claims of F. W. Greene as to his bonds apart from those pledged to the Chase National Bank. The said creditors urge most strongly that they should participate in the funds held by the trustee under the mortgage ahead of the lien of these bonds. They call attention to the fact that the decrees permitting them to operate the business allowed them to do so in the usual or ordinary course and that this carried with it the implication that they had the power to contract bills.

The answer to this argument seems clear. The Court has already hereinbefore referred to its lack of power, except in certain well specified instances and for certain specific purposes, to create claims or liens ahead of those of first mortgage bonds. Further, the Court does not believe that the ordinary meaning of the language used in the decrees would give, in any event, the receivers any such broad powers for continued conduct of a business or the running up of large bills as is herein contended. In the ordinary instance, the conduct of a business by receivers under orders of a court is of reasonably short duration and for the purpose of conserving the assets for reorganizing the business or to obtain a reasonable time to sell. A long con-

tinued operation is not contemplated and where such a situation arises, and particularly where the receivers find themselves in financial straits and losing money, it clearly would be their duty, in the opinion of the Court, to ask for instructions. Also, it seems quite clear that persons dealing with a receiver, other facts being equal, are presumed to know the limits of the receiver's powers.

*Kennebeck Box Co.* vs. *O. S. Richards Corp.*, 295 Fed. 418.

The Court feels, therefore, that the general creditors of the receivers are not materially aided by the form of the decrees under which they conducted the business in question. In fact, the creditors admit the law to be that the debts of the receivers of a private corporation (except possibly in a few instances) cannot be paid out of the mortgaged assets ahead of the bonds secured by the mortgage, unless the holders of the bonds have become in some way affected by acquiescence, consent or ratification to the acts of the receivers. In this connection, therefore, the creditors contend that in this case the trustee so acted as to bind the holders of the bonds above referred to. The cases are apparently not in entire unanimity as to what acts or conduct by a trustee constitute such a consent or acquiescence as to prejudice the rights of individual bondholders. Perhaps courts have gone somewhat further in finding such consent in cases where public service corporations have been involved. This has undoubtedly been from reasons of public policy.

*Wallace* vs. *Loomis*, 97 U. S. 146.

See also

*Goodman Mfg. Co.* vs. *Pittsburgh-Buffalo Co.*, 265 Fed. 561;
*Commonwealth Trust Co.* vs. *American Motorship Co.*, 287 Fed. 76.

On the other hand, it has been held in the case of a private corporation, unless the acts are clearly within the scope of the authority of the trustee and the trustee is a party to the proceedings, its acts will not prejudice or bind the individual bondholder.

*International Trust Co.* vs. *United Coal Co.*, 27 Colo. 246;

See also

*Bernard* vs. *Union Trust Co.*, 159 Fed. 620.

Of course, in this proceeding we have a private corporation in which the trustee was not a party to the original case. It is true that the trustee, acting through its attorneys and through certain of its officers, had some general knowledge of what was taking place. There were certain appearances in court and conferences were held from time to time, but the Court is satisfied that the trustee did not have a close knowledge of the actual financial affairs of the corporation, nor of the operation of the business by the receivers. As bearing upon the safety of the bonds represented by it, there was an appraisal made about six months before the receivership by a reputable firm, which appraisal, it turned out, was extremely high. Granting that the trustee may have realized some inaccuracy in this appraisal, it hardly seems possible that — at least during the early stages of the receivership — it could have fully realized the jeopardy of the bonds. It is true that it sent one of its officers to look at the plant but a fair reading of the testimony in this connection satisfies the Court that this was for the purpose of determining whether a line of credit should be extended to the corporation rather than a careful appraisal or examination of the physical properties or of the business itself. Further, the receivers carried on their own books a substantial equity and few, if any, detailed statements of the conduct of the business showing the mounting indebtedness were furnished the trustee. The consent of the trustee in December, 1924, to the operation of the hand-

printing plant for a space of time is not of great importance because prior thereto the holders of nearly all the bonds had themselves so consented.

Taking all the testimony on this point into consideration, keeping in mind that this was a private corporation, and realizing the situation as it appeared to the parties then, the Court cannot now find that the trustee so clearly consented or acquiesced in the operation of the plant in the manner in which the receivers were conducting it as to prejudice or bind the rights of the individual bondholders, and on this point, therefore, the Court is of the opinion that the general creditors take nothing.

There remains an examination of the conduct of the aforesaid individual bondholders themselves.

At the outset it is admitted that the thirty bonds held or controlled by F. W. Greene, being that portion of the 125 not pledged to the Chase National Bank, should be subordinated to the claims of the general merchandise creditors of the receivers. (See testimony of F. W. Greene.)

In this instance the facts disclose practically a pure estoppel. F. W. Greene was one of the receivers of the corporation, and assisted in contracting the bills in question.

As to the bonds owned and represented by E. A. Greene the problem presented is one of great difficulty. There can be little question, it seems to the Court on the testimony, but what Mr. E. A. Greene was given general power and authority to represent certain bondholders in addition to the bonds directly owned by him. (See letters and telegrams introduced as exhibits.)

The law recognizes that there may be cases where a bondholder so acts as to permit claims to become superior to that of the lien of his bonds.

*Teutonia Bank & Trust Co.* vs. *Security Brewing Co.*, 137 La. 1046.

See also

*Cake* vs. *Mohun*, 164 U. S. 311.

In this matter each case has to be determined on its own facts. A consideration of the evidence on this point would seem to show that Mr. E. A. Greene was in reasonably close touch by interview and by correspondence with the affairs of the receivership and the conduct of the business. He was probably the most vitally interested individual in the litigation. It is true that the testimony does not reveal clearly that he had a complete detailed knowledge of the receivers' business or of the figures involved. His testimony to a certain extent conflicts with itself. In one instance it would seem that he contested against more than $20,000, as provided in the decrees, being placed ahead of his bonds, and still, in other portions of his testimony, as the receivership continued he states several times that it was his desire that the wheels be kept turning and that he inferred there were creditors of the receivers. He was reasonably familiar with the efforts being made to dispose of the business as a going concern or to bring about its reorganization by the bringing in of new blood. It would seem from his evidence that he was clearly of the opinion that a forced sale of the plant should be avoided and that the business should be continued, at least for some length of time. He was familiar with the general depression in textile industry at that time and the low figures brought at the sale of the Goff plant in Pawtucket. The evidence discloses he did not ask the trustee to foreclose until the summer of 1925.

A careful consideration of his testimony would seem, in the judgment of the Court, to show that he was working along with the receivers and their counsel in the hope that they could all work out of a very bad situation. In other words, he was taking a chance that the business could be dis-

posed of as a going concern for the benefit of the creditors, stockholders and bondholders alike. Unfortunately, this did not happen. His attitude during the receivership, however, was such that it appears to the Court that the general creditors of the receivers can with propriety claim that he consented or acquiesced in such a manner as to now preclude him from asking that the bonds owned and represented by him be paid ahead of their claims. This, of course, cannot be called a pure estoppel or an estoppel in pais. Undoubtedly, the creditors, or most of them, did not know of Mr. Greene's feelings or attitude in the matter, but the cases discussing this question do not seem to require such definite knowledge or action on the part of the creditors. The acquiescence or consent mentioned appears to be more analogous to a quasi estoppel such as has been referred to by the Court in the cases of *Humes Construction Co.* vs. *Philadelphia Casualty Co.*, 32 R. I. 246, and *Murphy* vs. *Duffy*, 46 R. I. 210.

After a careful consideration, therefore, the Court finds that by reason of the attitude, conduct and actions of the individual bondholders, F. W. Greene and E. A. Greene, the lien of 30 of the bonds held and represented by the former and the lien of 202 bonds owned and represented by the latter should be subordinated to the claims of the general creditors of the receivers, and that they should be paid from the mortgaged assets in the hands of the trustee under the mortgage before any attempt is made to satisfy the liens of these said bonds.

If the funds remaining in the hands of the trustee are not sufficient to pay said creditors in full, then it appears to the Court that said creditors should receive their proper dividend in proportion to the amount of their claim, as from the testimony it seems impossible to determine clearly or fairly that the claim of any particular creditor should be preferred above that of the others.

During the trial certain testimony was admitted de bene over the objection of the Chase National Bank and E. A. Greene. Such testimony as relates to court papers or records and to conferences with the trustee, acting through its officers or attorneys, or to documents referred to by the trustee, the Court believes properly admitted. The objection thereto is overruled.

As to such conferences and conversations, however, between other individual parties in the case, apart from the trustee, the Court finds they are not properly admissible as against E. A. Greene or the Chase National Bank, and their objection thereto is sustained.

For complainant: Tillinghast & Collins, James C. Collins.

For respondent corporation and receivers: Gardner, Moss & Haslam.

For bondholders and creditors: Comstock & Canning, William A. Graham, P. C. Joslin, Henshaw, Lindemuth & Baker, John W. Baker, Greenough, Easton & Cross, Edwards & Angell, Huddy & Moulton, Everard Appleton, Frank L. Hanley, Hinckley, Allen, Tillinghast & Phillips, Murdock & Tillinghast, Benjamin M. McLyman, Lee & McCanna, Alfred S. and Arthur P. Johnson.