## 'Angier, Trustee *versus* Agnew.

1. The mortgagor of real estate may continue, after the execution of the mortgage, as before, to cut and sell the timber growing upon the premises, without violating any of the rights of the mortgagee by so doing.

2. Where such timber is sold without any fraud or concealment on the part of the mortgagor, the vendees thereof will take a good title as against the mortgagee.

3. In a suit by the mortgagee against such vendees to recover the value of the timber, where no fraudulent combination between the mortgagor and the vendees is alleged, it is quite immaterial whether the mortgagor was solvent or insolvent at the time of the sale. Evidence to prove his insolvency at that time is therefore inadmissible.

October 18th 1881. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

ERROR to the Court of Common Pleas of *Forest county:* Of October and November Term 1881, No. 292.

Trespass on the case for waste by cutting timber trees, by J. B. Angier, trustee for the creditors of the Titusville Savings Bank, against Leonard Agnew et al. Plea, not guilty, with leave, &c.

On the trial, before WETMORE, P. J., the plaintiff's evidence showed the following facts: In October 1873, the Titusville Savings Bank, a partnership association, failed. A plan was devised to get an extension of time, by which each stockholder was to deposit with the plaintiff, Angier, trustee for the credit-

[Angier *v.* Agnew.]

ors, securities as collateral to their individual liability as stockholders. In pursuance of this plan, Joshua Douglass, one of the stockholders, on November 29th 1873, executed to Angier, trustee, a mortgage for $5,000, that being his proportion of the liabilities, on a tract of land in Forest county, conditioned for the payment of the debts of the bank on or before January 1st 1876. This mortgage was recorded in Forest county, May 25th 1874.

On December 29th 1875, three days before the maturity of the mortgage, Douglass, the mortgagor, sold all the timber on the mortgaged premises to one Hilands, for the defendants, for $300. The defendants entered upon the land during 1877, and cut and carried away the greater part of the timber. This was done without the knowledge of the plaintiff.

In 1877, the plaintiff, as trustee, at the instance of the creditors, sued out the mortgage, and the land was sold at sheriff's sale for less than $200. He then brought this suit against the defendants.

The plaintiff offered in evidence proceedings in bankruptcy of Joshua Douglass, to show his insolvency in 1877. Objected to. Objection sustained. Exception.

At the close of the plaintiff's testimony, the court, being of opinion that the action could not be maintained, directed a nonsuit, and subsequently refused to take it off, whereupon the plaintiff took this writ, assigning for error the rejection of the above offer of testimony, and the refusal to take off the nonsuit.

*Neill* (*Heywang* with him), for plaintiff in error.—The court below held that we have no remedy. The question is, can a mortgagor of timber land, whose mortgage is recorded, sell and convey to a purchaser the right to strip the land of the timber, without liability on the part of the purchaser to the mortgagee. The timber, in Forest county, constitutes the chief value of the land, and the result of the decision below is, that the mortgagee, without fault on his part, is deprived of the security of his mortgage. We could not bring trover or trespass, there being no privity between plaintiff and defendants; nor replevin, nor estrepement, nor a bill in equity for an injunction, because the timber had disappeared. We therefore brought this comprehensive action on the case in the nature of an action for waste, our right to maintain which was virtually decided in Roberts *v.* Dauphin Bank, 7 Harris 71, 77; Denny *v.* Brunson, 5 Casey 382; McCullough *v.* Irvine, 1 Harris 438. The distinction between the action of waste proper and case in the nature of waste, is this, that whenever the former could be maintained for an injury committed by a privy, the latter may be maintained for such injury committed by a stranger: Patterson *v.* Cunliffe, 32

Leg. Int. 398. A mortgagor may cut timber to a reasonable extent, by implied license of the mortgagee, but he cannot denude a tract of timber-land. To what extent timber may be cut without waste is a question of fact for the jury, whether the action be in trespass or on the case: McCullough *v.* Irvine, supra; Coggill *v.* Mileburn & Co., 10 C. E. Green; Woodman *v.* Good, 6 W. & S. 172; McCay *v.* Wait, 51 Barb. 225; S. C., 8 Amer. L. Reg. (N. S.) 191; 18 Ibid. 588; Drown *v.* Smith, 52 Me. 141; Bond *v.* Lockwood, 33 Ill. 212; Page *v.* Robinson, 10 Cush. 99; Brady *v.* Waldron, 2 Johns. Ch. 148. The mortgagee may follow into the hands of a purchaser from a mortgagor a fixture severed from the mortgaged premises: Hoskin *v.* Woodward, 9 Wr. 42; Witmer's Appeal, Ibid. 455. In our case the mortgage was recorded and there was some other evidence to affect the defendants with notice of it, and the case should have been submitted to the jury.

*C. W. Stone* (with him *E. L. Davis*), for the defendant in error.—The court did not enter the nonsuit by reason of the form of action but because the elements of recovery did not exist. There was no evidence of any fraud on the part of the defendants, nor that they had actual knowledge of the mortgage, or of Douglass's insolvency. There is no duty on the part of the purchaser of standing timber or of coal, or minerals, to inquire if there is a mortgage on the land, or if the mortgagor is insolvent. A mortgagor in possession has the right in Pennsylvania to sell in the usual way the timber, coal and minerals thereon, unless the mortgagee stops him by ejectment or estrepement: Hoskin *v.* Woodward, 9 Wr. 44; Witmer's Appeal, Ibid. 455; Asay *v.* Hoover, 5 Barr 21; Schuylkill Nav. Co. *v.* Thoburn, 7 S. & R. 419. The cases from other states cited on the other side do not apply, as a mortgagee there takes an estate in the land, not a mere security. The same rule exists in Connecticut, where the doctrine as to mortgages is the same as in Pennsylvania: Cooper *v.* Davis, 15 Conn. 556; Gardner *v* Heartt, 3 Iowa 234. See also Wilson *v.* Maltby, 59 N. Y. 127.

Mr. Justice GORDON, delivered the opinion of the court November 7th 1881.

Angier, the plaintiff, as trustee for the creditors of the Titusville Savings Bank, must stand or fall on the rights of the bank as mortgagee of Douglass, for his suit has no other foundation. Therefore, whether Douglass was solvent or insolvent at the time of the execution of the mortgage, or at the time he conveyed the timber in controversy, is of no real consequence, for the establishment of either of these conditions could neither

[Angier *v.* Agnew.]

extend nor abridge the rights of the mortgagee. Had the plaintiff proposed to prove a fraudulent combination between Douglass and the defendants to strip the land of its timber to the injury of the bank or its creditors, we would have had a question very different from the one now before us. Then the insolvency of the mortgagee might have been regarded as one of the facts or circumstances which induced the fraudulent combination. But as no such proposition was made the evidence offered was properly rejected.

We are thus left to the single inquiry, whether the mortgagor may, after the execution of the mortgage, continue, as before, to cut, dig and sell the timber upon, or the coals or other minerals in, the mortgaged premises. If he may, then has the plaintiff, Angier, no case; for Douglass sold the timber growing upon this land to the defendants, without either fraud or concealment, and if he had the right to sell they had the right to buy, take possession of, and sever the timber from the land on which it was growing. But that Douglass, as mortgagor, had such right, seems to have been very plainly ruled in the cases of Hoskin *v.* Woodward, 9 Wr. 42, and Witmer's Appeal, Ibid. 455. In the first of these two cases the question was, whether the mortgagee could follow with his execution, issued from a judgment obtained on the bond secured by the mortgage, a lathe, one of the fixtures of a machine-shop, which had been severed by the mortgagor and sold to a third party, and it was held that he could, inasmuch as such severance and sale were a fraud upon the rights of the mortgagee. But from this ruling the sale of lumber, fire-wood, coal, ore, fruit or grain found in or growing on land, was expressly excepted, and it was said that these may be sold without violating the rights of the mortgagee, and for the reason that products of this kind are usually intended for consumption and sale. We may also add, that the use of these things in the way thus spoken of, cannot be a fraud per se on the mortgagee, for he must know when he takes his security, that such articles will continue to be subject to their ordinary use; indeed, as was said in the case cited, they may afford the only means which the debtor possesses with which to pay the mortgage.

The second case, above referred to, was that of a bill in equity by judgment creditors to restrain the removal and sale of a steam-engine, part of the premises bound by the judgment Here again, while it was admitted that such a bill could be sustained for the purpose indicated, yet, citing Hoskins *v.* Woodward, it was held that the fraudulent character of the severance must be determined by the character and circumstances of each case. While the dismantling of mills, factories and other permanent structures on the eve of bankruptcy must be regarded

[Steiner *v*. Erie Dime Savings and Loan Co.]

as a fraud on the rights of the mortgagee, yet that the rule did not apply to the use and sale of timber, coal and other natural products.

It will be observed that in this case, no distinction is made between the rights of the mortgagee and judgment creditor; indeed, both are said to stand on the same footing, and to be supported by the same principles. Mortgages and judgments are alike liens and nothing more, and they differ only in the methods prescribed for their collection; beyond this the rights which belong to their owners are the same. What, then, must be the effect of the doctrine contended for by the plaintiff? Just this; that the purchaser who buys ore, coal or timber from the owner of land covered by a lien of any kind, is guilty of constructive fraud against the lien creditor, and may, at any time within six years from his purchase, be subject to an action on the case. But a doctrine such as this would operate so disastrously upon the debtor and the business of the country that, were we to adopt it, it would soon be found to be a burden too intolerable to be borne. The very means necessary for the payment of those liens would be taken from the debtor, whilst no prudent person could risk the purchase of so much as a timber tree or a ton of coal from such debtor without having first obtained the consent of all his lien creditors.

As we cannot agree to be instrumental in the introduction of a condition of affairs such as this, opposed alike to our own authorities and the common understanding of our people, we must adopt and affirm the ruling of the court below.

Judgment affirmed.