ROBERT MINOR *et al.* v. PURSGLOVE COAL MINING COMPANY *et al.*

(No. 8346)

Submitted September 8, 1936. Decided December 18, 1936.

*E. M. Everly* and *Wm. E. Glasscock, Jr.*, for appellant.
*Chas. T. Herd, W. J. Kyle, J. I. Hook, H. C. Sayers* and *Frank Cox*, for appellees.

LITZ, JUDGE:

This suit, in its final stage, involves the ownership of royalties under a coal mining lease as between the lessors and the beneficiaries under a deed conveying the leased premises in trust to secure the payment of promissory notes.

By deed dated October 1, 1923, James L. Rush conveyed to Jarvis Coal Company, a corporation, a one-third undivided interest in a tract of approximately 108 acres of land in Monongalia County (including the Sewickley seam and a small portion of the Pittsburgh vein of coal therein), owned equally by H. Jarvis Eldred, E. M. Everly and himself; the consideration for the conveyance, of $37,500.00, being evidenced by a series of notes signed by the coal company, as maker, and payable to "James L. Rush or order." By deed of like date, executed as a part of the same transaction, Jarvis Coal Company and E. M. Everly conveyed to E. G. Donley, trustee, the two-thirds undivided interests of the grantors in the land to secure the payment of the notes. At the time of the conveyances, the Sewickley seam was being operated at two openings, through which about ten acres of the coal had been removed, and the entire property had been completely laid out and mapped for mining. On June 11, 1924, Jarvis Coal Company conveyed its one-third in the property to Eldred and Everly. By writing dated September 1, 1925, Eldred and Everly leased the coal, with all necessary mining rights, to E. H. Gil-

bert and R. M. Davis, who immediately assigned the lease contract to Gilbert-Davis Coal Company, a corporation. Section ten of the lease provides: "* * * it is understood and agreed, this lease is subject to a deed of trust in favor of James L. Rush on a part of said Sewickley vein of coal, but in case said lessors fail to pay said trust, then the lessees shall have the right to apply the royalties to payment of said trust." H. Jarvis Eldred died testate January 10, 1927, devising and bequeathing his property equally to his wife, Mildred M. Eldred, and infant son, H. Jarvis Eldred, Jr., and appointing her as executrix of his estate. By writing dated April 1, 1927, Gilbert-Davis Coal Company sublet to Pursglove Coal Mining Company, a corporation, 34.193 acres of the Sewickley seam underlying the leased premises, a small portion of which had been mined, subsequent to the execution of the deed of trust. The Pursglove Company proceeded to remove the coal from the 34.193 acres without paying royalties. The Gilbert-Davis Coal Company continued to mine the remaining area embraced by the lease until April, 1930, when it was adjudged a bankrupt, owing $16,000.00 in royalties for coal mined by it under the lease. Rush negotiated and transferred all of the notes prior to March 26, 1925, but continued to collect payments thereon from Everly until April 11, 1928. On April 25, 1928, after Rush had collected about $13,000.-00 on the notes, the holders thereof gave notice to Everly to cease payments to him. Early in 1930, E. G. Donley, as counsel for Rush, notified Gilbert-Davis Coal Company to make no further payments to Everly. Donley also discussed with Everly (the date not being stated) the sale of the property under the deed of trust, but it being suggested by Everly to Donley that a sale would probably result in the Pursglove Company ceasing to mine the Sewickley coal and by continuing to mine the underlying Pittsburgh seam, which it owned and was then operating, would destroy the Sewickley seam, no effort was made by Donley to sell the property. In May, 1930, J. I. Hook, as counsel for the note holders, again discussed the matter of sale under the deed of trust with

Everly, but abandoned the idea for the same reason. After several conferences participated in by Everly, E. G. Donley, as counsel for the Eldred estate, and counsel for the note holders, it was finally decided to institute suit on behalf of the beneficiaries under the deed of trust and the lessors against the Pursglove Coal Mining Company to recover the royalties due from it under the lease.

This suit, accordingly, was instituted August 11, 1930, by Robert Minor, Charles V. Garrison, William T. Moore and M. B. Patterson, trustees and assignees of the Citizens National Bank of Waynesburg, Pennsylvania; Bertha Minor, Union Deposit and Trust Company, as holders of the notes; E. M. Everly, Mildred M. Eldred, in her own right and as executrix of the estate of H. Jarvis Eldred, deceased; and others against Pursglove Coal Mining Company and others to recover the royalties due from it under the lease. In paragraph eight of the bill (which was verified by Everly), it is alleged: "Wherefore the plaintiffs say that the said E. M. Everly, Mildred Eldred, in her own right, and the defendant, H. Jarvis Eldred, Jr., are the owners of all the right, title and interest in and to said coal lands so leased to the said R. M. Davis and E. H. Gilbert as hereinbefore stated, and in the royalties due and owing under said lease, and that the interests of said parties in and to said coal lands and royalties are, respectively, one-half, one-fourth and one-fourth, subject to the deed of trust executed to Edward G. Donley, trustee, hereinbefore set forth, and subject to the debts of the said H. Jarvis Eldred, deceased." Paragraph nine states: "That said trustee and the owners and holders of the said notes are informed and believe and therefore allege that under and by virtue of the said deed of trust hereinbefore referred to as Exhibit C, they are entitled to a first lien on the two-thirds interest in said coal property for the payment of said sums respectively due them as aforesaid and/or in the royalties due and owing under the terms of the said lease and assignments thereof hereinbefore referred to."

A decretal judgment was entered in the cause March 11, 1933, in favor of E. M. Everly, Mildred M. Eldred,

in her own right and as executrix of the estate of H. Jarvis Eldred, deceased, and H. Jarvis Eldred, Jr., an infant, in the sum of $33,933.67; the decree providing: "And it further appearing to the court that the several note holders in this proceeding do each claim an undivided interest in said sum of $33,933.67 and the interest thereon, it is ordered, adjudged and decreed that the Pursglove Coal Mining Company do pay the sum of $33,-933.67, with interest thereon at the rate of six per cent from this date, to E. G. Donley, who is hereby constituted a special receiver of the same, to be held by E. G. Donley as such special receiver for distribution among the various note holders and lessors herein, according to their respective interests as shall hereafter be ascertained and decreed by this court in this proceeding, * * *." Thereafter, cross-pleadings were filed in the cause by the note holders and lessors setting up their respective claims to the fund held by the special receiver.

Robert Minor; Charles V. Garrison, William T. Moore and M. B. Patterson, trustees and assignees of the Citizens National Bank of Waynesburg, Pennsylvania; Bertha Minor; Union Deposit and Trust Company, a corporation, holders of the notes, filed their "petition, bill of complaint and amended and supplemental bill of complaint and cross-bill" February 22, 1934, against H. C. Johnson, administrator, c. t. a., of the estate of James L. Rush, deceased, E. M. Everly, Mildred M. Eldred, in her own right and as executrix of the last will and testament of H. Jarvis Eldred, deceased, H. Jarvis Eldred, Jr., and other parties to the original bill, alleging *inter alia*, that at the time of the institution of the suit, the lessors and holders of the notes "were in accord as to the manner of the distribution of such sums as should be recovered from the Pursglove Coal Mining Company on account of royalties arising from the mining of Sewickley Coal under" the 34.193 acres of land, "it being then understood between them that the suit was to be prosecuted and that two-thirds of the recovery should go to the holders of the notes; and that such agreement and understanding continued all the way through the

prosecution of the suit until after the decree of March 11, 1933, when the said Everly changed his attitude and is now, as plaintiffs are advised, seeking to claim some interest in the two-thirds" which, "according to said agreement and understanding, was to go to the plaintiffs as the holders of said trust notes, and these plaintiffs deny such claim and aver that the said E. M. Everly has no interest in said recovery, unless he acquired the same from said H. Jarvis Eldred or from his estate or personal representative." Mildred M. Eldred, in her own right and as executrix of the estate of H. Jarvis Eldred, deceased, and E. M. Everly, in their joint and several answers to the petition, bill of complaint, amended and supplemental bill and cross-bill of the note holders, filed July 17, 1934, deny that there was any understanding or agreement at the time of the institution of the suit or at any other time between the note holders and the lessors that the note holders should have two-thirds of the recovery against the Pursglove Coal Mining Company, or that the note holders and the lessors were in accord during the prosecution of the suit against the Pursglove Company as to the distribution of the proceeds of any judgment that might be obtained against it. The answer also avers that E. M. Everly is entitled to one-half and the estate of H. Jarvis Eldred to the other one-half of the funds in the hands of E. G. Donley, special receiver. Other pleadings were filed by the parties directed mainly to the issue of whether there was an express agreement between them prior to the institution of the suit affecting the distribution of the recovery against the Pursglove Coal Mining Company. The evidence also centered around this issue. The trial court decided that the note holders were not entitled to any of the recovery by virtue of the deed of trust, but held that Everly and the note holders had entered into an express agreement at or about the time of the institution of the suit, in which Everly agreed that the note holders should receive two-thirds of the recovery against Pursglove Coal Mining Company. The court, further holding that the estate of H. Jarvis Eldred, deceased, was not a party to the agree-

ment, accordingly decreed that the fund be divided equally between the note holders and the Eldred estate.

The appeal was awarded upon the petition of E. M. Everly. The note holders, insisting upon an affirmance of the decree as to Everly and cross-assigning error thereto in so far as it adjudges that the Eldred estate is entitled to more than one-third of the recovery, rely upon (1) the deed of trust; (2) the provision in the lease permitting the lessees to apply the royalties to the payment of the notes; (3) the alleged agreement between themselves and Everly; and (4) alleged estoppel by Everly to claim any part of the fund because of his suggestion to them, upon which they acted, that a sale of the property under the deed of trust would result in the Pursglove Coal Mining Company ceasing operation of the Sewickley seam, and, by continuing to mine the Pittsburgh vein, destroy the Sewickley coal.

First. The trust creditor has no estate in, or right of possession to, the trust property by virtue of the deed of trust. He has merely a chose in action secured by the trust, which may be enforced only by sale of the property. The trustee has no right to the possession until default has been made in the payment of the trust debt, and then only for the purpose of making the sale or preserving the property pending proceedings for that purpose. *Swann* v. *Young*, 36 W. Va. 59, 14 S. E. 426. The grantor in a deed of trust is, in the absence of a stipulation in the deed to the contrary, entitled to the rents, issues and profits of the property until the trust is foreclosed by sale or a decree is entered in a foreclosure suit sequestering the rents. *Cox* v. *Horner*, 43 W. Va. 786, 28 S. E. 780; *Gilbert* v. *Washington City, etc., R. Co.*, 33 Gratt. (Va.) 645. The note holders assert that the rule does not apply where, as in this case, the rents or royalties are derived from the severance and sale of the corpus of the trust property. The lessors meet this contention by asserting that, notwithstanding the trust creditors may have enjoined the removal of the coal by showing that the security was thereby being endangered, they are not entitled to the royalties from the coal which they have

suffered to be removed. This question was presented in *Childs* v. *Hurd,* 32 W. Va. 66, 9 S. E. 362. There, the owner of an operating coal lease executed a mortgage thereon. Becoming insolvent, the mortgagor, Charles S. Hurd, placed the management and control of the mines in the hands of Martin L. Shaffer with the understanding that out of the net proceeds of the business Shaffer would pay a debt Hurd owed to him and the debts he owed to sundry miners and laborers. In holding that the mortgagee was not entitled to the net profits accumulated by Shaffer in the operation of the mines, after payment of the specified debts, the court stated:

"The law is well settled, that a mortgagee is not entitled to demand of the mortgageor or owner of the equity of redemption the rents and profits of the mortgaged premises, until he has actual possession. The rule on this subject is thus stated in Bacon's Abridgment, tit. 'Mortgage,' C: 'Although the mortgagee may assume possession by ejectment at his pleasure, and according to the case of *Moss* v. *Gallimore,* 1 Doug. 279, may give notice to the tenants to pay him the rent at the time of the notice, yet, if he suffers the mortgageor to remain in possession or in receipt of the rents, it is a privilege belonging to his estate, that he cannot be called upon to account for the rents and profits to the mortgagee, even although the security be insufficient.'

"In *Higgins* v. *Building Co.,* 2 Atk. 107, Lord Hardwicke thus states the law: 'In the case of a mortgagee, where a mortgageor is left in possession, upon a bill brought by the mortgagee for an account in this court he can never have a decree for an account of rents and profits from the mortgageor for any of the years back during the possession of the mortgageor.' And again, in *Mead* v. *Lord Orrery,* 3 Atk. 244, he says: 'As to the mortgageor, I do not know any instance, where he keeps in possession, that he is liable to account for the rents and profits to the mortgagee, for the mortgagee ought to take the legal remedies to get into the possession.'

"The American decisions sustain this rule. So long as the mortgageor is allowed to remain in possession, he is

entitled to receive and apply to his own use the increase and profits of the mortgaged estate; and, although the mortgagee may have the right to take possession upon condition broken, if he does not exercise the right, he cannot claim the rents; if he wishes to receive the rents, he must take means to obtain the possession." In *Duff* v. *Hopkins*, 10 Sad. (Pa.) 483, 14 A. 364, 21 W. N. C. 491, cited by appellees and presenting a situation similar to that involved in *Childs* v. *Hurd*, the Supreme Court of Pennsylvania said: "The owner of a tract of land has the right to remove and convert into money for his own use the timber growing upon the surface and the minerals underlying it; but, if he has lien creditors, they have the right to object to the commission of waste to the prejudice of their liens, and at their instance the owner will be restrained in the exercise of the rights and powers of an owner. Until the machinery of the court was set in motion to arrest the commission of waste, Baum (mortgagor) had the right to the price of the coal; but when waste was enjoined and the estrepement was subsequently dissolved under an order directing the money to be paid into court for distribution to the parties entitled, his right as an owner was suspended and the court held the fund (accruing subsequent to the order) in lieu of the coal for the benefit of those who were entitled to it." In holding that the mortgagor could not sell and remove fixtures from the mortgaged premises, the Supreme Court of Pennsylvania, in *Hoskin* v. *Woodward*, 45 Pa. 42, by way of comparison, observed: "But may not a mortgagor sell in the usual way the timber, firewood, coal, ore, fruit or grain found or growing on the land, without violating the rights of the mortgagee? Yes, he may, until the mortgagee stops him by ejectment or estrepement, for those things are usually intended for consumption and sale, and the sale of them is the usual means of raising the money to pay the mortgage. But in the case of a factory, or other building, it is by the use of it as it is, and not by its consumption or its sale by piecemeal, that all its profits are to be derived. We think the case was properly decided." Ruling that the income derived

from the operation of mortgaged coal mines by the mortgagor were not subject to the mortgage, the court, in *Young* v. *Northern Illinois Coal & Iron Co.*, 13 Fed. 806, stated: "Until the mortgagee takes possession of the mortgaged property, either in person or by receiver, the mortgageor has the right to the income of the property. Especially is this true in case of a mortgage of property like this, which does not bear a fixed rental, but where the income is derived by working or operating the property, requiring a constant expenditure of money to make it productive." Accord: *Young* v. *Haviland*, 215 Mass. 120, 102 N. E. 338; *Kremer* v. *Rule*, 216 Wis. 331, 257 N. W. 166; *Kremer v. Crase*, 209 Wis. 183, 244 N. W. 596; *Vanderslice* v. *Knapp*, 20 Kan. 647.

Second. The provision in the lease permitting the lessees to apply the royalties to the payment of the notes was, as the trial court held, for the benefit of the lessees and in no wise constituted an assignment of the royalties to the beneficiaries under the deed of trust.

Third. Was there a contract, as the trial chancellor found, between the note holders and Everly in which he agreed that they should receive two-thirds of the recovery in the suit against the Pursglove Coal Mining Company? Such agreement, the note holders claim, was entered into in the office of E. G. Donley at Morgantown in the presence of Donley, counsel for the Eldred estate, and Hook, Joseph Patton and James J. Purman, counsel for the note-holders. Patton and Hook so testify. Donley says that he knows nothing of the agreement. Conceding that it was the opinion of the attorneys representing the lessors and the note holders at the time of the institution of the suit that the note holders, by virtue of the deed of trust, would be entitled to two-thirds of the recovery against Pursglove Coal Mining Company, Everly denies that there was an agreement of the parties to that effect. W. J. Kyle, an attorney who formerly represented the Eldred estate, testified that after the institution of the suit, in several discussions with Hook concerning the distribution of the royalties, Hook insisted that the note holders, by virtue of the deed of trust, were entitled to

two-thirds of the royalties, but did not at any time claim that there had been an agreement with Everly in relation to the matter. Robert T. Donley, who drafted the bill, testified that he had no cognizance of any agreement between the note holders and lessors. In June, 1930, Everly and Mrs. Eldred signed a stipulation agreeing that two-thirds of the royalties to be paid by Ernest Coal Company, who desired to continue the operation of Gilbert-Davis Coal Company after its insolvency, should be paid to the note holders. This stipulation does not seem to have become effective, and the royalties derived from the mining by Ernest Coal Company were used by E. G. Donley to pay the expenses of the plaintiffs in the litigation with Pursglove Coal Mining Company. About the time of the institution of the suit, Everly furnished Hook with a statement showing the royalties received from Gilbert-Davis Coal Company and the amounts thereof paid Rush on the notes. On March 17, 1933, after the rendition of the judgment against the Pursglove Coal Mining Company, Everly wrote to Hook as follows: "In our conversation in Donley and Hatfield's office the other day, in which I stated that I would claim the one-half of the one-third of the judgment obtained against Pursglove Coal Mining Company, you understand I was speaking only for myself, and not for Mrs. Eldred; and I made the statement not because I think your clients have any legal right to any of the judgment, but because they probably have a moral right to the two-thirds of the judgment, and I thought we had been working it on that plan all the way through. However, if your clients attempt to claim any interest in the one-third of the judgment, I shall withdraw my consent to them having any part of the judgment and let the court decide who is legally entitled to the same." It will be observed that the issue is whether Everly entered into an express contract with the note holders agreeing that they should have two-thirds of the recovery in the suit, or that there was nothing more than a consensus on the part of the attorneys representing the note holders and lessors that the note holders were entitled, under the deed of trust,

to two-thirds of the royalties. We are of the opinion that the circumstances clearly show that there was no agreement as to the distribution of the recovery against the Pursglove Company. As Everly owned but one-half of the property, the agreement would have been effective only as to one-half of the royalties without the consent of Mrs. Eldred. If there had been such an agreement, why was it omitted from the original bill? Again, since the consent of Everly and Mrs. Eldred to the division of royalties from mining by Ernest Coal Company was required in writing, why was not the more important agreement for the division of the royalties from the Pursglove Company, if made, also evidenced by writing? After the entry of the judgment against Pursglove Coal Mining Company, Purman, who is now dead, contended that the note holders were entitled to the entire recovery. Again, it may be asked, if there had been a specific agreement as to the distribution of the fund, why would such a contention have been made by an attorney for the note holders, who was familiar with the situation? The allegations of the bill, hereinbefore recited and relied upon by the note holders, were, as shown by the context, based solely upon the deed of trust. A pleader is not "concluded by the averment of a legal inference, if such inference is repugnant to the true legal conclusions to be drawn from the state of the facts alleged in the same pleading." 21 R. C. L. 562.

Fourth. We find no basis for estoppel against the lessors, but we are of opinion that they are not entitled to the entire recovery in view of the note holders foregoing their right to sell under the deed of trust and joining the lessors in the suit against the Pursglove Company. Under these conditions, one of the purposes of the suit was, in effect, the sequestration of the royalties on the Sewickley coal remaining in the 34.193 acres at the time of the institution of the suit. As the royalties were being withheld by the Pursglove Coal Mining Company and the main purpose of the suit was to compel the payment thereof by it, there was no occasion for the appointment of a receiver to collect them *pendente lite*. A

substantial quantity of coal was mined during the pendency of the suit, and some remained unmined at the time proof was taken. The judgment included the royalties on all the mined and unmined coal.

We are, therefore, of the opinion that Everly and the estate of H. Jarvis Eldred are entitled (in equal proportions) to royalties on all the coal mined from the 34.193 acres prior to the institution of the suit, and one-third of the royalties on the coal then unmined; and that the note holders are entitled to two-thirds of the royalties on the coal remaining unmined at the institution of the suit.

The decree is, therefore, reversed and the cause remanded for the purpose of distributing the fund in the hands of the special receiver in accordance with this decision.

*Reversed and remanded.*