J. S. SWEENEY *v.* C. W. TABOR

(No. 8536)

Submitted April 14, 1937. Decided May 4, 1937.

*A. D. Preston,* for plaintiff in error.

*J. Q. Hutchinson* and *Grover C. Trail,* for defendant in error.

RILEY, JUDGE:

In this action of assumpsit, the plaintiff, J. S. Sweeney, sought to recover from the defendant, C. W. Tabor, damages for breach of contract whereby the defendant Tabor agreed to saw the timber on the plaintiff's tract of land. To a judgment in favor of the defendant, based upon a directed verdict, the plaintiff brought this writ of error.

In 1923, the plaintiff was the owner of a tract of land

of 114 acres situated in Raleigh County, West Virginia, and the defendant, the owner of two sawmills, of fifteen and twenty-five horsepower, respectively, was engaged in the sawmill business. Under date of February 10, 1923, defendant wrote to the plaintiff offering to sell either one of his sawmills or to saw the timber on plaintiff's land. He then inspected the timber and on February 26, 1923, wrote to the plaintiff again offering to saw the timber and making inquiry as to a deed of trust on the property. The contract upon which this action is brought, dated March 3, was signed on March 6, 1923. Prior to the execution of the contract, the plaintiff went to one M. J. Meadows, who had a deed of trust against the plaintiff's property and was proceeding to enforce the same, and secured from him a letter, dated March 5, 1923, addressed to the defendant, to the effect that Meadows would not interfere with the cutting of the timber if the money first obtained therefrom would be applied to satisfaction of his deed of trust.

The Virginian Joint Stock Land Bank held the first deed of trust on all of the plaintiff's property, including the 114 acres of timber in question. There were a number of other smaller liens. Meadows, however, was the only lien creditor who made any move to enforce his lien. However, by contract dated March 10, 1923, the plaintiff, the said Meadows, and one J. E. Summerfield, trustee under the Meadows deed of trust, agreed in effect that the sale under the deed of trust would be continued until March 31, 1923, provided Sweeney would turn over to the said Meadows before said date a draft from the Virginian Railway Company for the sum of $325.00.

The plaintiff then made necessary preparations for the clearing and preparing the mill site and making the road to haul the mill and lumber. On March 7, 1923, defendant wrote to the plaintiff not to cut any timber. Defendant again wrote to plaintiff saying that the Raleigh County Bank had informed him that it had a lien and would not agree to the cutting of the timber. On March 16th, the defendant again wrote the plaintiff saying that he was informed by some party that he could not cut

the timber and that he had disposed of his mill. What became of the other sawmill, the record does not disclose.

The plaintiff had a ready sale to the Virginian Railway Company of all ties produced from his land. On January 16, 1923, the lumber agent of said railway company wrote to the plaintiff: "* * * we will take care of your output and will further arrange to give you very prompt inspections and follow these with quick payment."

In sufficient detail, the plaintiff proved the profit which would have been made on each kind of ties which would have been produced from his land under the contract. Likewise, the daily capacity of the defendant's sawmill was shown. Under the evidence, a jury would have been justified in finding that if the sawmill had been installed without delay, the proceeds of the lumber which could have been sawed and disposed of to the Virginian Railway Company would have been sufficient within the three weeks' period provided for in the contract of May 10, 1923, to have forestalled the sale under the Meadows deed of trust. The trial court, on objection, refused to let the plaintiff show the length of time required to install the sawmill and the time required to cut sufficient ties to pay all of the small liens against the plaintiff's property.

When plaintiff concluded his own testimony, the trial judge inquired of him as to whether he had any more evidence to offer in regard to the releases or waivers of deeds of trust or judgment liens against the property. His counsel answered: "No." Although plaintiff had not formally rested his case, the defendant's attorney then moved for a directed verdict which motion was sustained.

The defendant filed the general issue and a special plea. By the special plea, three grounds of defense were set forth: (1) fraud in misrepresenting that the land was unencumbered; (2) abandonment of the contract by both parties; (3) defendant was prevented from performance by threatened interference of lien creditors.

The first ground of defense was not sustained by the evidence, certainly not as a matter of law. The defen-

dant's letter of February 26, 1923, addressed to the plaintiff, shows clearly that the defendant knew when he executed the contract of at least one deed of trust against the property. Moreover, plaintiff testified that he did not represent to defendant that there were no liens on the property; but on the contrary, he told him of his situation.

We are unable to say that the evidence contains any substantial proof of abandonment of the contract. The record does not disclose when this action was brought. However, mere delay in bringing an action does not constitute abandonment. In the instant case, the plaintiff, after the repudiation of the contract by the defendant, wrote to the defendant a letter, dated March 19, 1923, expressing his disappointment in defendant's action. This letter was offered in evidence but was refused admission. Defendant made no reply. Under the circumstances, the trial court, as to this defense, was not justified in directing a verdict.

But, the defendant claims, that the threatened interference of the lien holders made it impossible for him to perform his part of the contract. Meadows was the only one of the lien holders who made any threat. Before the contract was executed, he wrote to defendant stating that he would not interfere with the cutting of the timber provided the proceeds were applied to his lien. The amount secured by this Meadows deed of trust was $325.00. The evidence amply shows, not as a matter of law but as a question of fact for the jury, that if the sawmill had been placed on the mill site without delay the proceeds from the sale of lumber to the Virginian Railway Company would have been sufficient within the three weeks' period of time provided for in the contract of March 10, 1923, to have satisfied the Meadows deed of trust in full.

The fact that plaintiff's land was encumbered with liens when the contract was executed does not of itself constitute an interference with the contract. In the absence of a showing that the cutting of the timber would substantially impair the security, the lien creditors

had no right to interfere with the cutting of the timber. *Vybiral* v. *Schildhauer*, 130 Neb. 433, 265 N. W. 241. In the recent case of *Minor et al.* v. *Pursglove Coal Mining Company*, 118 W. Va. 170, 189 S. E. 297, we said: "The trust creditor has no estate in, or right of possession to, the trust property by virtue of the deed of trust. He has merely a chose in action secured by the trust, which may be enforced only by sale of the property." A few years ago, an eminent American authority wrote: "* * * the right of *cestui* is a right *in personam* against the trustee, specifically enforceable with reference to the trust *res* * * *." (Harlan F. Stone, the Rights of the Cestui Que Trust, 17 Columbia Law Review, 467, 500.) The deed of trust creditors in the instant case, having merely an equitable chose of action against the trustee in reference to the trust property, had no claim or right to the timber. Generally, a mortgagor, or the grantor in a deed of trust, remaining in possession before default may cut and sell the timber. 41 Corpus Juris, p. 623, subject, Mortgages, sec. 597; *Scott* v. *Wharton*, 2 H. & M. (12 Va.) 25; *Moore* v. *Southern States Land etc. Company*, 83 F. 399; *Stewart* v. *Scott*, 54 Ark. 187, 15 S. W. 463; *Adams* v. *Corriston*, 7 Minn. 456; *Angier* v. *Agnew*, 98 Pa. 587, 42 Am. St. Rep. 624. In *Childs* v. *Hurd*, 32 W. Va. 66, 9 S. E. 362, and *Minor* v. *Pursglove Coal Mining Company, supra*, we held that trust creditors are not entitled to royalties from coal which they have suffered to be removed. The mining of coal and the severance of timber present analogous cases. Coal before mined and lumber before severed are a part of the land.

The creditors under the deeds of trust in the instant case had no right, so far as the evidence discloses, to interfere with the cutting of the timber prior to foreclosure. *A fortiori*, the judgment lien creditors stood in no better position. Meadows' letter to the defendant and the contract of March 10, 1923, prevent us from saying as a matter of law that the Meadows deed of trust would result in an interference with the cutting of the timber. The other creditors were passive; they took no active

steps leading toward interference with the performance of the contract by the defendant.

We think the trial court erred in directing the verdict for the defendant. Clearly the case under proper instructions should have been submitted to the jury. Therefore, the judgment of the trial court is reversed, the verdict set aside, and a new trial awarded.

*Judgment reversed; verdict set aside; new trial awarded.*