408 S.E.2d 66

**STATE of West Virginia ex rel. Dennis W. WATSON and Crystal E. Watson, Petitioners,**

**v.**

**Honorable Sam WHITE, Judge of the Circuit Court of Doddridge County; Andrew J. Long; and Paul M. Cowgill, Jr., Respondents.**

**No. 20217.**

Supreme Court of Appeals of West Virginia.

Submitted July 2, 1991.

Decided July 18, 1991.

488

William J. Leon, Vorbach & Gianola, Morgantown, for the petitioners.

Paul M. Cowgill, Jr., West Union, for the respondents, Cowgill and Long.

BROTHERTON, Justice:

The petitioners, Dennis W. Watson and Crystal E. Watson, ask this Court to issue a writ of prohibition against the respondents, the Honorable Sam White, Judge of the Circuit Court of Doddridge County, West Virginia, and Andrew J. Long and his attorney, Paul M. Cowgill, Jr., plaintiff and third-party defendant, respectively, in a civil action which is now pending before the Circuit Court of Doddridge County. The petitioners seek a writ vacating a court order dated November 13, 1989, which denied their motion to dismiss and their motion to expunge a notice of *lis pendens*[1] filed by respondents Long and Cowgill.

The facts relevant to this case disclose that by deed dated December 28, 1983, the respondent Long sold the petitioners approximately 325 acres of land located in Doddridge County. The petitioners financed $34,600.00 of the total $90,000.00 purchase price, evidenced by a promissory note whereby the petitioners agreed to pay Long $314.41 per month for twenty-five years. This note was secured by a second deed of trust[2] on the property dated De-

---

1. *See* W.Va.Code §§ 55–11–1 through 55–11–3 (1981). Literally, *"lis pendens"* means a pending suit. *Lis pendens* has been defined as "the jurisdiction, power, or control which a court acquires over property involved in a suit, pending the continuance of the action, and until final judgment therein." 54 C.J.S. *Lis Pendens* § 2 (1987). The common law term *"lis pendens"* is sometimes used to indicate a "notice of *lis pendens*," which is regulated by statute.

2. The first deed of trust on the property secured a $90,000 note due to the Federal Land Bank of

cember 28, 1983, which contained a covenant against cutting timber on the property without written permission from Long. A breach of this covenant would constitute cause for acceleration of the remaining balance due and foreclosure under the terms of the deed of trust.[3]

As part of a settlement agreement in a separate civil action, on June 26, 1987, the respondent Long assigned all of his rights and interests in the petitioners' note and the deed of trust securing same to Ms. Ruby LeMasters for a period of ten years, effective June 1, 1987. At the end of the ten-year assignment, if all the payments are made, the terms of the assignment are satisfied and the rights and interests in the note and deed of trust continue to Long for the remainder of the twenty-five years. Thus far, the petitioners have made all payments due and owing under the note to the assignee, who is not a party to this cause of action and has never claimed that the petitioners have defaulted under the terms of the deed of trust.

On January 4, 1989, the petitioners contracted to sell the subject property for $125,000.00. However, before this transaction was completed, on March 3, 1989, the respondent Long, represented by the respondent Cowgill, initiated the present civil action against the petitioners in the Circuit Court of Doddridge County, demanding a $25,000.00 judgment, plus the unknown value of the timber cut, interest, and costs. Long alleged that after 1987, during a period in which he was living out of state, the petitioners cut and removed substantial amounts of timber from the property, in violation of the terms of the second deed of trust. As the beneficial holder of the note, Long claimed he was entitled to recover the value of the cut timber, as well as damages for the depreciation of the property which the petitioners pledged as collateral under the terms of the second deed of trust. The respondents never attempted to serve this complaint upon the petitioners.

On March 3, 1989, the same day the civil action was instituted, the respondent Cowgill also recorded a notice of *lis pendens* against the subject property secured by the second deed of trust, as well as other property owned by the respondent Long in Harrison County, West Virginia. The *lis pendens* stated that "[s]aid civil actions arise out of a dispute between the parties concerning the interpretation of the terms and conditions of a deed of trust." The petitioners were subsequently advised of the existence of the *lis pendens* by the prospective purchasers of the property and were then unable to complete the sale of the land.

In the hopes of having the *lis pendens* removed so that they could proceed with the sale of their property, the petitioners filed a motion to quash the *lis pendens* on March 28, 1989. The petitioners asserted that the *lis pendens* was improper because the subject matter of the respondent's lawsuit "does not concern the propriety of [the petitioners'] ownership interest in the real-

Baltimore, of which approximately $64,000 remains outstanding.

**3.** The deed of trust states, in pertinent part: It is expressly understood and agreed that the [Watsons], their agents and tenants shall keep the aforesaid premises in as good a condition as they are now in and not commit any waste or injury to such an extent as to impair the value of the same as security for this loan and upon failure to do so, or upon the commission of such waste or injury, the loan secured by this deed of trust shall at once become due and payable at the option of the said Andrew J. Long and the sale of said premises may be made as hereinafter set forth. It is further expressly understood and agreed that neither parties of the first part nor their assigns or agents shall cut, remove or market any timber upon the aforesaid premises without the written consent of Andrew J. Long until the loan secured by this deed of trust has been paid in full and fully released of record.

It is further covenanted and agreed that if the said Dennis W. Watson and Crystal E. Watson shall at any time make default in the payment of said note, or any installment thereof, or any renewal thereof when due, or shall fail to comply with the covenants and conditions herein set forth, then upon notice of such failure to the said trustees by the said Andrew J. Long, or by someone for said Andrew J. Long, it shall be the duty of the said trustees, or the one so acting, and he or they are hereby authorized and directed to make sale of the said real estate hereinbefore described....

ty, but rather merely seeks to encumber said realty solely for the purpose of securing said asset to permit [the respondent] to look to the same in satisfaction of any personal judgment which may arise as a result of this litigation." Because the respondents had never attempted to serve the petitioners with the underlying complaint, the petitioners made a "special appearance" before the court solely for the purpose of having the *lis pendens* removed so that the sale of their property could be finalized.

On April 7, 1989, the petitioners' motion to quash was heard by the respondent Judge White, who denied the motion. However, he advised the petitioners that he would reconsider granting their motion if they provided him with some legal authority which indicated that a circuit court judge could order the removal of an improperly filed *lis pendens* before the ultimate resolution of the matter at trial.

The petitioners subsequently filed a motion to expunge the *lis pendens* on April 25, 1989. At a May 5, 1989, hearing on this motion, Judge White recognized that he did in fact have the authority to expunge an improperly issued *lis pendens*. However, Judge White stated that he did not have the authority to expunge the improper *lis pendens* at this point because the petitioners were only making a special appearance in the litigation and he still had not been presented with any evidence that he could remove the *lis pendens* without first hearing the case on its merits. Judge White once again requested that the petitioners cite additional legal authority to support their position.

In order to remove any jurisdictional impediment perceived by the trial court, the

petitioners personally appeared before the Clerk of the Circuit Court of Doddridge County and accepted service of process of the respondent Long's initial complaint on June 16, 1989. The petitioners served their answer to the complaint on July 17, 1989, and also filed a counterclaim, alleging that the respondent Long's improper filing of the notice of *lis pendens* created a cloud upon the title to the petitioners' property, giving rise to a cause of action for slander of title. On July 25, 1989, the petitioners served the respondent Cowgill with a third-party complaint in which essentially the same allegations were made, charging Cowgill with unethical conduct in bringing the action. The respondent Cowgill answered the complaint and counterclaimed. He then filed a fourth-party complaint against the petitioners' attorneys, charging them with unethical conduct in defending the action and seeking one million dollars in compensatory damages and three million dollars in punitive damages.[4]

On September 28, 1989, the petitioners moved for dismissal of the case pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure, asserting that the respondent's complaint seeking money damages for default under the terms of the deed of trust stated no cause of action recognized under West Virginia law. Alternatively, the petitioners asked that summary judgment be granted in their favor pursuant to Rule 56. The petitioners also sought to have the third-party counterclaim and fourth-party complaint dismissed. A hearing was held on October 13, 1989, and by order dated November 13, 1989, the respondent Judge White denied the petitioners' motion to dismiss and the motion to expunge the *lis pendens*. Judge White also

---

**4.** The petitioner Dennis Watson filed a complaint against the respondent Cowgill with the West Virginia State Bar's Committee on Legal Ethics on August 7, 1989, questioning the propriety of the third-party counterclaim and the fourth-party complaint. On November 14, 1990, the respondent Cowgill was sent a letter of admonishment from the State Bar which stated that "by praying for money damages in the lawsuit which you filed on behalf of Mr. Long on March 3, 1989, when that remedy was not available under a deed of trust, you violated

Rule 3.1 of the Rules of Professional Conduct...." The State Bar also found that the respondent Cowgill's retaliatory lawsuit against the petitioners' counsel violated Rule 3.1.

Rule 3.1 of the Rules of Professional Conduct states, in relevant part:
A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law.

denied the petitioners' oral motion to certify to this Court a question concerning the validity of the respondent's cause of action.[5]

In appealing from the lower court's November 13, 1989, order, the petitioners now ask this Court to issue a writ of prohibition, maintaining that because the respondent Long's suit against them seeks money damages, it is not a proper basis upon which to record a *lis pendens*. Citing W.Va.Code § 55–11–2, the petitioners state that under West Virginia law, a *lis pendens* may only be employed to give notice of the pendency of litigation which seeks to enforce a lien upon, right to, or interest in designated realty. Thus, the petitioners argue that Judge White's refusal to grant their motion to expunge the *lis pendens* constitutes a substantial, clear-cut legal error and justifies the issuance of a writ of prohibition. The petitioners also argue that Judge White erred when he refused to dismiss the respondent's complaint for failing to state a claim for which relief can be granted, as they maintain that a party owed a debt secured by a deed of trust owns no interest in the realty pledged as collateral.

▇▇▇▇ The respondent Long contends that an action for damages was his only means of protecting his interest in the subject property because an injunction was useless since the timber was removed and

sold before he discovered it, and he had assigned his right of foreclosure to a third party. First, we point out that the timber which was allegedly cut in this case belonged not to the respondent Long, but to the petitioners, the same as a house or any other improvement belongs to the owner of the real property upon which it is placed, subject only to the deed of trust lien. A deed of trust is a charge on property which secures the indebtedness described therein for the benefit of a money lender. The lender is protected because the property owners convey the property to a trustee under certain terms, conditions, and covenants which are designed to ensure that the loan is repaid. However, neither the trustee nor the lender have any interest in the property which is conveyed as long as the property owner complies with the terms, conditions, and covenants which are set forth in the deed of trust.[6] In *Minor v. Pursglove Coal Mining Co.*, 118 W.Va. 170, 176, 189 S.E. 297, 299 (1936), this Court also recognized that, "[t]he trust creditor has no estate in, or right of possession to, the trust property by virtue of the deed of trust. He has merely a chose in action secured by the trust, which may be enforced only by sale of the property."[7]

▇▇▇▇ Long asserts that he was without the right to get an injunction to stop the petitioners from cutting the timber. He is correct. Even if the respondent Long had

5. On December 15, 1989, the petitioners filed a motion to bifurcate the proceedings pursuant to Rule 42(c) of the West Virginia Rules of Civil Procedure, seeking separate trials of the issues raised in the original complaint against them. A hearing was held on December 29, 1989, at which time Judge White denied this motion and indicated that he intended to require both parties to retain new attorneys because of apparent conflict of interests between both sets of counsel and their respective clients.

6. Of course, the property owner may improve the property and, ultimately, it may be worth more than the amount which is secured by the deed of trust. However, any increase in value does not inure to the benefit of either the trustee or the money lender, but to the property owner. Although any increase in value would tend to make the money lender even more secure, the lender can only recover the amount due as set forth in the deed of trust.

The respondent Long alludes to the possibility that because the timber was removed from the property, the security (the property) was no longer worth the balance due on the deed of trust. Even if this were true, he could exercise his right of foreclosure and if the sale failed to bring enough to pay the indebtedness, he could maintain a cause of action for the deficiency. In this instance, the petitioner already had a potential buyer for the property, and this sale would have paid all the lien holders. The respondent Long was entitled to no more than that.

7. In *Citizens' National Bank of Connellsville v. Harrison–Doddridge Coal & Coke Co.*, 89 W.Va. 659, 665, 109 S.E. 892, 894 (1921), this Court stated that, "[i]n case of default in payment of a debt secured by a deed of trust, no change occurs in the title. The property merely becomes liable to sale under the power of sale conferred upon the trustee."

been aware that the petitioners were about to remove timber from the property without his consent, his only remedy was foreclosure, as the deed of trust provided that any violation of the covenant would accelerate the payment of the balance due on the note. If the respondent Long notified the trustee of the deed of trust that the Watsons had not obtained his written consent to cut the timber on the property, the trustee could be directed to foreclose and then sell the property under the terms and conditions set forth in the deed of trust.

■ The respondent argues that he did not have a right of foreclosure because he assigned the right to receive payments, as well as all other rights under the deed of trust, to the third party for ten years.[8] However, the length of the deed of trust was twenty-five years, and the respondent retained the rights granted him under the deed of trust to protect against any waste or injury which might impair the value of the property for the remaining years following the expiration of the assignment. Therefore, he could have notified the trustee to foreclose. Obviously, he did not exercise this right, but instead initiated a civil action for damages and filed a notice of *lis pendens* against the property. When the respondent persisted and refused to release the *lis pendens* or withdraw the civil suit, the potential purchaser backed out.

■ A notice of *lis pendens* is properly filed pursuant to W.Va.Code § 55–11–2 (1981) only when a person seeks "to enforce any lien upon, right to, or interest in designated real estate." The recordation of a formal notice of the pendency of a suit is required only if the proceeding is one to subject real estate to debt or liability. *Rardin v. Rardin*, 85 W.Va. 145, 150, 102

S.E. 295, 298 (1919). Thus, where the primary purpose of a lawsuit is to recover money damages, and the action does not directly affect the title to or right of possession of real property, the filing of a notice of *lis pendens* is inappropriate.[9]

[I]f the litigation in which a formal notice of lis pendens was filed is not such as is contemplated by the statute ... the notice may act as an unwarranted cloud on the title to the property described therein. Such a situation comes within the general rule authorizing the courts to order a formal notice of lis pendens to be expunged, in appropriate circumstances, from the records in which it was filed. It has even been declared that where the complaint in an action in which a formal notice of lis pendens was filed discloses that the litigation in which it was filed is not such as is contemplated by the statute that authorizes the filing of such a notice, the court has not only the power, but also a duty, to expunge the notice.

51 Am.Jur.2d *Lis Pendens* § 37, at 984 (1970) (footnotes omitted). In this case, the respondent Long had no rights in the property which could affect the petitioners' title to or right to possess the property. We conclude that the filing of the notice of *lis pendens* was improper, and the notice should have been expunged by the lower court.

Certainly, the circuit court is not without blame in this case, as the judge refused to expunge the notice of *lis pendens* on two separate occasions. In his answer in response to the petitioners' petition for a writ of prohibition which is now before this Court, the respondent Judge White states first that he "agrees completely with the petitioners that [the respondent Long] ...

---

**8.** Lest we forget, it was the respondent Long who created his own perceived dilemma by assigning not only the payments due, but also all other rights under the deed of trust. All that he actually needed to do was assign Ms. LeMasters the right to receive the payment—he did not have to assign the other rights which he had to protect his loan.

**9.** In *Will of Sabatino*, 90 Misc.2d 56, 393 N.Y.S.2d 671, 673 (N.Y.Sur.1977), the court interpreted a *lis pendens* statute and stated that:

Since a lis pendens is a provisional remedy and is viewed as an extraordinary privilege, courts have demanded strict compliance with the statutory requirements. Thus, *the propriety of a lis pendens must stand upon the allegations in the pleadings, and the court should look to the primary purpose of the action, as set forth in the complaint or counterclaim.* (Emphasis added.)

*See also Blake v. Gilbert*, 702 P.2d 631 (Alaska 1985).

is not entitled to recover damages for diminution in value to said real estate or for the value of the timber cut," and that he indicated this belief several times during the underlying civil action. However, in a seeming contradiction, Judge White then maintains that *equity demands* that the respondent Long have the right to sequester or escrow either the value of the wrongfully cut timber or the diminished value of the property caused by the breach of the deed of trust covenant until the petitioners pay off the balance due on the note secured by the second lien deed of trust. That, simply stated, is the purpose of the deed of trust.

This statement by Judge White may in some way explain his apparent reluctance to rule in the petitioners' favor in the proceedings below. However, it is the opinion of this Court that both law and equity demand that we find for the petitioners and grant their prayer for a writ of prohibition.

As we noted above, in early 1989, the petitioners anticipated selling the subject property for $125,000, an amount greater than the combined totals of the first lien deed of trust (approximately $64,000 outstanding) and the second lien deed of trust ($36,400). However, because the respondents subsequently filed the notice of *lis pendens*, the petitioners were forced to endure two and one-half years of "acting out" by attorneys and judges over a matter which could and should have been easily resolved in order to permit the petitioners to complete the sale of the property and pay the indebtedness due Long. Is it any wonder people are fearful of lawyers and courts, when the simplest of problems becomes a vexatious litigation which requires reams of recyclable paper, delays, court appearances, and legal costs beyond even the most educated person's expectations? There simply is no justification for the respondents' outrageous behavior in this case. The respondents' filing of the notice of *lis pendens* appears to have been a willful and intentional interference with the petitioners' rights as owners of the subject property. Such interference will not be sanctioned by this Court.

To summarize our holding in this case, we find that the respondent Long's suit for money damages gave him no right in the subject property which would permit the filing of a notice of *lis pendens*. When a formal notice of *lis pendens* is filed in a litigation that is not the type contemplated by W.Va.Code § 55–11–2 (1981), it is the duty of the court to expunge the improperly filed notice from the records. We further find that, as a matter of law, the petitioners' motion for summary judgment should be granted and any action by the respondents Long or Cowgill against the petitioners or their attorney should be dismissed.

The writ prayed for by the petitioners is hereby granted, and this case is remanded to the Circuit Court of Doddridge County for disposition.

Writ granted.